STATE OF NEBRASKA, APPELLEE, V. PATRICK R. FITCH, APPELLANT.

582 N.W.2d 342

Filed July 24, 1998.   No. S-97-612.

Adam J. Sipple, of Quinn & Wright, for appellant.

Don Stenberg, Attorney General, and Mark D. Raffety for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

GERRARD, J.

Patrick R. Fitch was charged by information with unlawful possession of a controlled substance (marijuana) with intent to deliver, in violation of Neb. Rev. Stat. § 28-416 (Reissue 1995). Fitch filed a motion to suppress evidence of a controlled substance as well as paraphernalia and records associated with the substance's use seized by the police during a nighttime search of the house where he resided. The trial court overruled Fitch's motion to suppress. Subsequently, in a bench trial, Fitch was found guilty of unlawful possession of a controlled substance with intent to deliver and was sentenced to a term of 30 to 60 months' imprisonment with credit for 10 hours served. Fitch appeals and assigns as error, inter alia, that insufficient facts were contained in the police officer's affidavit to establish reasonable cause for a nighttime search. We agree and, therefore, reverse the judgment below and remand this cause to the district court with directions to vacate Fitch's conviction and dismiss the charge against him.

## FACTUAL BACKGROUND

On April 12, 1996, Darwin Shaw, an investigator for the Blair Police Department, prepared an affidavit and application for issuance of a search warrant for a residence located at 1163 Grant Street in Blair, Nebraska. Shaw's affidavit stated that he had just and reasonable grounds to believe and did believe that a controlled substance as well as paraphernalia and records pertaining to possession and distribution of the substance were kept on the premises. Shaw's affidavit further stated that the property was under the control of Fitch or his mother, Patricia M. Fitch.

The affidavit also stated that

within the last thirty (30) days, this investigator [Shaw] has been observing individuals frequenting the address at

1163 Grant Street, Blair, Washington County, Nebraska, and that these persons are known to have been arrested in the past for drug violations. That on or about March 21, 1996, there was a trash pickup at 1163 Grant Street. Suspected marijuana stems were found in a trash bag. Documents verified the contents were from 1163 Grant Street. There was a second trash pickup on or about March 28, 1996, at 1163 Grant Street and marijuana seeds and stems were fund [sic] along with a box of sandwich bags, zig zag papers, and other zip lock bags that had the odor of marijuana in them. The items that were seized are commonly used for the illegal use and/or sale of controlled substances. Documents in the trash bag showed this trash bag was from 1163 Grant Street, Blair, Nebraska. That on April 11, 1996, a third trash pickup was conducted at 1163 Grant Street where several marijuana seeds, stems and a marijuana roach was [sic] found. There was also a zip lock baggy that contained a green leafy substance suspected to be marijuana leaves. A document sent to Patrick Fitch at 1163 Grant Street was also found.

Also found was a handwritten piece of paper that had the names [A__, D__, B__, and M__] on it. There were dollar amounts beside each name. Those dollar amounts were crossed out and new (lesser) amounts were then written next to the original figures. From intelligence information, [D__] is the name used by [name omitted]. This investigator has knowledge that [name omitted] has been arrested at lease [sic] two (2) times for drug violations. [Name omitted's] vehicle has also been observed at the Fitch residence within the past week. It is this investigator's belief that the name [A__] refers to [name omitted]. [Name omitted] has also been arrested by this investigator for drug violations, and he has been observed entering and leaving the Fitch residence within the past month.

A further trash pickup was attempted on April 4, 1996, however, no trash was found in the trash containers at that time.

WHEREFORE, [Shaw] prays that a search warrant may issue according to law.

Based on Shaw's affidavit, a search warrant was issued on April 12, 1996, by the clerk magistrate of the county court, who found probable cause to believe that sufficient grounds existed for the issuance of the warrant. The facts contained in Shaw's affidavit were incorporated into the body of the search warrant. At the suppression hearing, Shaw testified that he went to the clerk magistrate because the county judge was not available at the time. The last sentence of the search warrant read: "This warrant shall be served (~~daytime~~) (any time)." The word "daytime" was scratched out, and the initials of Shaw and the clerk magistrate were placed just below the scratched-out word.

Seven days later, on April 19, 1996, at approximately 10 p.m., Shaw, accompanied by a canine unit and five police officers, served the warrant upon Fitch's 61-year-old mother, as Fitch was not home when the officers first arrived. During the execution of the search warrant, the officers found marijuana, a scale, cash, and other items of evidence which were offered and received, over Fitch's objection, at trial.

Prior to trial, Fitch filed a motion to suppress all evidence obtained pursuant to the search warrant and a separate motion to suppress any statements he had given to police, arguing that the warrant was issued and executed in violation of his statutory and constitutional rights because he had an expectation of privacy in his garbage, because the warrant was issued by a clerk magistrate without a showing that a judge was not available to issue the warrant, and because the warrant was executed at night. In overruling Fitch's motions to suppress, the trial court found that Fitch had no reasonable expectation of privacy in his garbage that was made accessible to the public, that the authority of the clerk magistrate to issue a search warrant is presumed unless a contrary showing is made, and that the affidavit supported a reasonable inference that the public interest justified nighttime service of the warrant. The trial court made no separate findings with respect to whether Fitch's statements were freely and voluntarily given to police. Fitch was subsequently convicted of unlawful possession of a controlled substance with intent to deliver, and he timely appealed. We then granted Fitch's petition to bypass the Nebraska Court of Appeals and transferred the case to our docket.

## SCOPE OF REVIEW

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Chitty*, 253 Neb. 753, 571 N.W.2d 794 (1998); *State v. Aguirre-Rojas*, 253 Neb. 477, 571 N.W.2d 70 (1997).

Regarding questions of law, an appellate court is obligated to reach a conclusion independent of determinations reached by the trial court. *State v. White*, 254 Neb. 566, 577 N.W.2d 741 (1998); *State v. Marshall*, 253 Neb. 676, 573 N.W.2d 406 (1998).

## ASSIGNMENTS OF ERROR

Restated, Fitch claims that the trial court erred in (1) finding that there were facts or circumstances in the affidavit justifying a nighttime search of his residence, (2) concluding that the clerk magistrate had the authority to issue the search warrant absent a showing in the affidavit or the warrant that no judge was available in the county to issue the search warrant, and (3) concluding that he did not have a reasonable expectation of privacy in his garbage that was set out for collection by his garbage-removal service. Because our resolution of Fitch's first assigned error is dispositive, we do not analyze either of the other assigned errors.

## ANALYSIS

### NIGHTTIME SEARCH

In his first assignment of error, Fitch asserts that no facts or circumstances in Shaw's affidavit justified executing the search warrant at night and, thus, that the physical evidence seized pursuant to the search warrant should have been suppressed. Neb. Rev. Stat. § 29-814.04 (Reissue 1995) requires that the body of the search warrant

> shall direct that it be served in the daytime unless the magistrate or judge is satisfied that the public interest requires

that it should not be so restricted, in which case the warrant may direct that it may be served at any time. . . . For purposes of this section, daytime shall mean the hours from 7 a.m. to 8 p.m. according to local time.

We were called upon to construe this portion of § 29-814.04 in *State v. Paul*, 225 Neb. 432, 405 N.W.2d 608 (1987). In *State v. Paul*, the record revealed that a local police officer was attempting to serve a warrant on an individual named "Florentino Robles" at Robles' father's home in Lexington, Nebraska. Robles' father advised the officer that Robles was at the residence of the defendant, Paul. Approximately 10 minutes later on December 2, 1985, the officer went to the defendant's house and knocked on the north door. A white male answered the front door at approximately 10:15 p.m., and the officer asked the individual if a Florentino Robles was at the residence. This individual advised that Robles was not at the house; however, while talking with the individual, the investigating officer detected a strong odor of burnt marijuana coming from inside the residence. The officer left the residence and, shortly thereafter, placed this information in an affidavit in support of a search warrant. Shortly after midnight on December 3, the officer took the affidavit to the county judge and obtained a search warrant that authorized entry onto the defendant's premises "'At Any Time.'" *Id.* at 433, 405 N.W.2d at 610. The search warrant was served at about 2:20 a.m. on December 3. The evidence seized during the search provided the basis for the defendant's convictions.

On appeal, we determined that an affidavit in support of a search warrant need not contain a separate statement of facts showing why the public interest requires that the warrant be served at night in order for the nighttime search to be valid. See *id.* Instead, we concluded that " '[i]f the affidavit, read in a common sense manner and as a whole reasonably supports the inference that the interests of justice are best served by the authorization of nighttime service, provision for such service in the warrant is proper.' " *Id.* at 435, 405 N.W.2d at 610 (quoting *People v. Mardian*, 47 Cal. App. 3d 16, 121 Cal. Rptr. 269 (1975), *disapproved on other grounds, People v. Anderson*, 43 Cal. 3d 1104, 742 P.2d 1306, 240 Cal. Rptr. 585 (1987)).

Because the affidavit stated that an investigator smelled burnt marijuana emanating from the home at 10:15 p.m., approximately 2 hours prior to the issuance of the search warrant, we determined that sufficient facts were stated to justify a nighttime search. We reasoned that the odor of burnt marijuana supports the inference that marijuana is being consumed and destroyed and that it is clearly in the public interest to prevent the destruction of contraband which evidences criminal activity. We went on to state that had the investigating officer waited until morning to conduct the search, it was possible that all of the marijuana would have been burned up. Thus, the officer took the only course available to him—he obtained a warrant for a nighttime search. See *State v. Paul, supra.*

However, in *State v. Paul*, we clearly pointed out that the affidavit in support of a search warrant must contain facts which show the reviewing judicial officer that the public interest requires nighttime service. Quoting from *Henry v. State*, 373 A.2d 575 (Del. 1977), we stated:

> "The elements of the requisite 'satisfaction' and the documentation thereof are not announced in the statute but, clearly, something more is required than the Alice-in-Wonderland explanation offered by the State; namely, issuance of the warrant shows that the magistrate was satisfied because he would not have issued it if he were not."

*State v. Paul*, 225 Neb. at 434-35, 405 N.W.2d at 610.

With the foregoing in mind, we review Shaw's affidavit to determine whether it states facts sufficient to justify the nighttime search of the Fitch residence. Although Shaw avers that within the last 30 days there had been "persons . . . known to have been arrested in the past for drug violations" frequenting the Fitch residence and that there was some evidence supporting a suspicion of drug activity found in searches of the Fitch trash bags on March 21 and 28 and April 11, 1996, the affidavit contained no facts that would support an inference that contraband was being disposed of, removed, or hidden in such a manner that nighttime service was required. In fact, the search warrant was served on Fitch *7 days after it had been issued* on April 12.

If the provisions of § 29-814.04 are to have any meaning relative to nighttime searches, more must be shown to reviewing

judicial officers than was offered in this case. The privacy of citizens in their homes, secure from unreasonable nighttime intrusions, is a right of vast importance, as demonstrated by the provisions of § 29-814.04. We, therefore, hold that a factual basis supporting a nighttime search is required as a prerequisite to the issuance of a warrant authorizing a nighttime search under § 29-814.04. Because no such factual basis existed in the present case, issuance of the search warrant authorizing entry of the premises "at any time" was in error.

### GOOD FAITH EXCEPTION

However, even when a search warrant is issued in violation of § 29-814.04, we must consider whether the executing officers acted in good faith under *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), as adopted in *State v. Reeder*, 249 Neb. 207, 543 N.W.2d 429 (1996), *cert. denied* 519 U.S. 1006, 117 S. Ct. 506, 136 L. Ed. 2d 397, in serving the warrant at night. We do not limit the good faith exception, first articulated in *United States v. Leon, supra*, to violations of the U.S. Constitution. The rationale for conducting a *Leon* good faith exception analysis is equally applicable whether a search warrant is found to be defective under § 29-814.04 or whether the invalidity of the search warrant is based on a lack of probable cause. The good faith exception provides that evidence obtained by officers acting in reasonable good faith reliance on a search warrant issued by a neutral and detached magistrate that is later found to be invalid is nonetheless admissible. *State v. Reeder, supra*. The test for reasonable reliance on a search warrant is an objective standard of reasonableness which requires officers to have a reasonable knowledge of what the law prohibits. *Id.* The law prohibits nighttime service of a search warrant unless the affidavit supports the reasonable inference that the public interest is best served by nighttime service. See *State v. Paul*, 225 Neb. 432, 405 N.W.2d 608 (1987). Suppression of the evidence remains appropriate if the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid. *State v. Reeder, supra*.

Other jurisdictions, in circumstances where no factual basis supports the issuance of a warrant for a nighttime search, have

held that the *United States v. Leon* good faith exception does not apply. *Richardson v. State*, 314 Ark. 512, 863 S.W.2d 572 (1993) (citing *Hall v. State*, 302 Ark. 341, 789 S.W.2d 456 (1990)); *Rodriguez v. Superior Court (People)*, 199 Cal. App. 3d 1453, 245 Cal. Rptr. 617 (1988). In *Hall v. State, supra*, the Arkansas Supreme Court, noting the use of an objective standard, reasoned that the good faith exception was not applicable because a reasonably well-trained officer would know that a nighttime search made without stating an underlying need for a nighttime search in the supporting affidavit is illegal despite the issuing magistrate's authorization. Likewise, in *Rodriguez v. Superior Court (People), supra*, the court held that for purposes of the good faith exception, an officer, who was the affiant in the affidavit submitted to secure the search warrant, could not objectively rely on the validity of a nighttime endorsement in a search warrant when he knew or should have known that no facts were set forth in the affidavit to show that nighttime service was necessary and when he knew that the drug operation he expected to expose was ongoing. We are persuaded by the reasoning of these courts and conclude that where no factual basis supports the issuance of a warrant for a nighttime search, the good faith exception, articulated in *United States v. Leon, supra*, is not applicable. The standard underlying the § 29-814.04 good faith exception is whether the officer(s) had a good faith belief that the affidavit submitted in support of obtaining the search warrant stated facts sufficient to justify a nighttime search, not whether the officer(s) had a good faith belief that probable cause existed for the issuance of the search warrant.

In the instant case, since the affidavit in support of the warrant, which was incorporated in the body of the search warrant, did not contain facts showing a need for a nighttime search of the Fitch residence, Shaw, the affiant of the affidavit, and the other officers were entirely unreasonable in believing that the warrant could be properly served during the nighttime, 7 days after the issuance of the warrant. As previously noted, the affidavit utterly failed to set forth any facts that would have given the officers reasonable cause to believe that any of the items specified in the search warrant would be disposed of, removed, or hidden before daylight, factors thereby justifying nighttime

service of the warrant. Therefore, because the affidavit in support of the warrant, which was incorporated in the body of the search warrant, was so facially deficient relative to the need for a nighttime search that the executing officers could not reasonably presume it to be valid, we determine that the good faith exception is not applicable and, thus, that the trial court clearly erred in denying Fitch's motion to suppress the evidence seized pursuant to the search warrant.

## OTHER EVIDENCE OF GUILT

Finally, because it is clear that Fitch was convicted upon erroneously admitted evidence, we must determine whether there was evidence of Fitch's guilt other than that which was seized pursuant to the invalid search warrant. The record reveals that the only evidence of Fitch's guilt, other than that which was seized pursuant to the invalid warrant, was a statement that Fitch gave to the police at approximately 12:20 a.m. on April 20, 1996. The evidence established that Fitch returned to the residence shortly after the police arrived and that Fitch was present when the officers executed the search warrant. During the course of the search, the officers found and seized a metal container in Fitch's bedroom containing several bags of marijuana, a scale, a ledger, and rolled-up money. Subsequent to this discovery, Fitch was arrested. After booking Fitch and giving him *Miranda* warnings, the police then proceeded to question Fitch at the police station. Immediately after giving the *Miranda* warnings, the investigating officer explained the probable cause for the arrest, to which Fitch replied, "Well it looks like you got me good." Fitch then gave a handwritten statement to the police incriminating himself with respect to the seized marijuana and other items of evidence. The issue we must resolve is whether Fitch's custodial statement is admissible evidence or whether the evidence should have been suppressed because it was the product of the illegal search, or, as condemned by *Wong Sun v. United States*, 371 U.S. 471, 487, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963), the " 'fruit of the poisonous tree.' "

In *Wong Sun v. United States*, the U.S. Supreme Court required exclusion not only of evidence directly produced by a constitutionally invalid search but also of evidence indirectly

derived from the unconstitutional search. *State v. Abdouch,* 230 Neb. 929, 434 N.W.2d 317 (1989). Reference to "fruit of the poisonous tree" in *Wong Sun v. United States, supra,* is a condemnation of the government's subsequent exploitation of a prior violation of a defendant's constitutional rights. *State v. Abdouch, supra.* As noted previously, a violation of a defendant's important rights under § 29-814.04 is no less deserving of appropriate application of the exclusionary rule. Whether evidence is the derivative product of an invalid search turns on the question whether the evidence was obtained by exploitation of the illegal search or, instead, by means sufficiently distinguishable to be purged of the taint of the illegal search. See *State v. Abdouch, supra.*

> "In the typical case in which the defendant was present when incriminating evidence was found in an illegal search . . . it is apparent that there has been an 'exploitation of that illegality' when the police subsequently question the defendant about that evidence or the crime to which it relates. This is because 'the realization that the "cat is out of the bag" plays a significant role in encouraging the suspect to speak.'
>
> . . . .
>
> ". . . [I]t is crystal clear that giving the defendant the *Miranda* warnings will not break the causal chain between an illegal search and a subsequent confession. . . ."

*Id.* at 945-46, 434 N.W.2d at 327-28 (quoting 4 Wayne R. LaFave, Search & Seizure, a Treatise on the Fourth Amendment, § 11.4(c) (2d ed. 1987)).

Based on the foregoing, despite the fact that the *Miranda* warnings were given to Fitch before he gave his statement to the police, because Fitch was present when incriminating evidence was found in the illegal search of his residence, Fitch undoubtedly recognized the futility of remaining silent when he gave a written statement further incriminating himself with respect to the seized marijuana. See *State v. Abdouch, supra.* Thus, we conclude that Fitch's custodial statement was obtained as an exploitation of the invalid search and seizure of evidence at his residence, thereby rendering his custodial statement a "fruit of the poisonous tree." *Wong Sun v. United States, supra.* Because

Fitch properly filed a motion to suppress the statement and because there is no evidence of Fitch's guilt other than that which was seized pursuant to the invalid warrant, we determine that Fitch's conviction should be reversed and this cause remanded to the district court with directions to vacate Fitch's conviction and dismiss the charge against him.

## CONCLUSION

For these reasons, the judgment below is reversed and this cause is remanded to the district court with directions to vacate Fitch's conviction and dismiss the charge against him.

REVERSED AND REMANDED WITH DIRECTIONS TO VACATE AND DISMISS.