2005 ND 15

**STATE of North Dakota, Plaintiff and Appellant**

v.

**Christopher FIELDS, Defendant and Appellee.**

**No. 20040037.**

Supreme Court of North Dakota.

Jan. 19, 2005.

Allen M. Koppy (argued), State's Attorney, Mandan, N.D., for plaintiff and appellant.

Steven M. Light (argued) and Lindsey D. Haugen, Larivee & Light, Grand Forks, N.D., for defendant and appellee.

NEUMANN, Justice.

[¶ 1] The State appealed from the trial court's grant of Christopher Fields' motion to suppress evidence related to a search of his home on May 15, 2003. We hold the nighttime search violated N.D.R.Crim.P. 41(c)(1), and affirm the order suppressing the evidence obtained as a result of the illegal search.

I

[¶ 2] On May 13, 2003, Officer Eisenmann testified at a hearing in support of a warrant to search Fields' home. Eisenmann testified that during a garbage search law enforcement discovered five corner baggies with white residue powder, one of which tested positive for methamphetamine, three burnt "tinfoilies" regularly used for smoking methamphetamine, and a cut up hanger with the strong smell of marijuana. Eisenmann also testified he had personal knowledge Fields used his vehicle to transport narcotics. Eisenmann

testified that during a traffic stop in May 2002, law enforcement discovered a handgun, cash, and drugs in Fields' vehicle. This evidence was a result of an illegal search of Fields' vehicle. *State v. Fields,* 2003 ND 81, ¶ 21, 662 N.W.2d 242.

[¶ 3]   Fields moved to suppress any evidence found as a result of the 2003 search of his home, arguing the illegally obtained evidence from the 2002 traffic stop could not be used to support the warrant. Fields argued that without the tainted evidence, the warrant was not supported by probable cause.   The trial court granted the motion after finding the search warrant was improperly supported by evidence of a previous illegal search of Fields' vehicle.   *See Fields,* 2003 ND 81, 662 N.W.2d 242 (holding evidence obtained due to an unlawful detention during a traffic stop must be suppressed).   The trial court held that without the evidence from the illegal search, the warrant would not have been issued because it lacked the necessary finding of probable cause.

[¶ 4]   On appeal, the State does not dispute the evidence from the illegal search of Fields' vehicle cannot support a valid search warrant.   The State argues the search warrant was supported by enough independent evidence, even without the tainted evidence, to establish probable cause.   Fields argues, even if the warrant was supported by probable cause, the evidence did not support a separate finding of probable cause sufficient to support the nighttime warrant.   Fields argues the evidence obtained as a result of the deficient warrant should be suppressed.

## II

[¶ 5]   The State argues the evidence was improperly suppressed because, after excising the illegally obtained evidence, the remaining evidence is sufficient to establish probable cause for the search warrant. We have addressed probable cause stating:

> Probable cause is required for a search warrant under the Fourth Amendment to the United States Constitution, and Article I, Section 8 of the North Dakota Constitution.   Whether there is probable cause to issue a search warrant is a question of law.   The totality-of-the-circumstances test is used to review whether information before the magistrate was sufficient to find probable cause, independent of the trial court's findings.
>
> * * * *
>
> Probable cause to search does not require the same standard of proof necessary to establish guilt at trial.   Probable cause to search exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place. Circumstantial evidence may alone establish probable cause to support a search warrant.   The information available for a probable cause determination is considered together, not separately.

*State v. Wamre,* 1999 ND 164, ¶¶ 5–6, 599 N.W.2d 268 (internal quotations and citations omitted).

[¶ 6]   It is well established that illegally obtained evidence cannot be used to establish probable cause to issue a search warrant.   *State v. Corum,* 2003 ND 89, ¶ 9, 663 N.W.2d 151 (citing *Alderman v. United States,* 394 U.S. 165, 177, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *State v. Winkler,* 1997 ND 144, ¶ 12, 567 N.W.2d 330; *State v. Runck,* 534 N.W.2d 829, 833–34 (N.D.1995); *State v. Kunkel,* 455 N.W.2d 208, 211–12 (N.D.1990)).   To determine whether probable cause exists, we excise the tainted information from the affidavit and consider the remaining legal evidence presented to the issuing magis-

trate. *See State v. Winkler*, 552 N.W.2d 347, 353 (N.D.1996) (noting to have a valid search, a search warrant must be based upon a source independent of information gained from an illegal entry). After removing the tainted evidence from consideration, evidence from the garbage search and from police surveillance of Fields' home remain to establish probable cause for the search. The garbage search produced five corner baggies with white residue powder, one of which tested positive for cocaine, three burnt "tinfoilies" regularly used for smoking methamphetamine, and a cut up hanger with the strong smell of marijuana.

■ [¶ 7] Probable cause to issue a search warrant "exists if the facts and circumstances relied on by the magistrate would warrant a person of reasonable caution to believe the contraband or evidence sought probably will be found in the place to be searched." *Corum*, 2003 ND 89, ¶ 22, 663 N.W.2d 151 (citations omitted). Relying on the Eighth Circuit Court of Appeals, this Court stated, "Where drug residue is discovered in the garbage, 'it is well established that affidavits based almost entirely on the evidence garnered from garbage may be sufficient to support a finding of probable cause.'" *State v. Jones*, 2002 ND 193, ¶ 17, 653 N.W.2d 668 (quoting *United States v. Sumpter*, 669 F.2d 1215, 1221 (8th Cir.1982)). This Court has previously held probable cause to issue a search warrant existed when probable cause was "primarily established from drug residue in the garbage." *Id.* (citing *State v. Duchene*, 2001 ND 66, ¶¶ 15–17, 624 N.W.2d 668 (holding probable cause to issue a search warrant was supported by marijuana seeds and stems found in the garbage along with prior drug convictions); *State v. Johnson*, 531 N.W.2d 275, 278 (N.D.1995) (holding the presence of marijuana seeds in the garbage provid-

ed a substantial basis to support probable cause); *State v. Erickson*, 496 N.W.2d 555, 559 (N.D.1993) (holding evidence of marijuana combined with citation and envelope with Erickson's name in the garbage supported a determination of probable cause)).

■ [¶ 8] In *State v. Thieling*, 2000 ND 106, 611 N.W.2d 861, we noted baggies, plastic and tin foil, common household items found during a garbage search, did not support probable cause to believe illegal drugs were being packaged in the home. *Id.* at ¶¶ 9, 13. The baggies were torn and tied but did not contain drug residue. *Id.* at ¶ 9. We stated that the garbage evidence without drug residue did not create a high degree of suspicion and was "merely a thin layer to be measured in the probable cause analysis." *Id.* Fields' garbage also contained baggies. However, one of the baggies tested positive for a methamphetamine residue. The garbage also contained burnt tin foil consistent with methamphetamine use and a cut up hanger with the strong smell of marijuana. This actual drug evidence, rather than items that may be indicia of drugs, is enough to support probable cause. Considering the totality of the circumstances, the evidence obtained from the search of Fields' garbage and police surveillance "would warrant a person of reasonable caution to believe the contraband or evidence sought probably will be found in the place to be searched." *Corum*, 2003 ND 89, ¶ 22, 663 N.W.2d 151 (citations omitted). After excising the tainted evidence, the search warrant was supported by probable cause.

### III

[¶ 9] Fields argues the search warrant was not supported by a separate finding of probable cause for the nighttime search and, therefore, the evidence should be suppressed. Rule 41(c)(1), N.D.R.Crim.P., requires the issuing magistrate find a suffi-

cient showing of probable cause to justify the authorization of a nighttime search. *See State v. Knudson,* 499 N.W.2d 872, 875 (N.D.1993) (concluding reasonable cause is synonymous with probable cause) (overruled on other grounds *State v. Herrick,* 1997 ND 155, 567 N.W.2d 336). We have stated, "The purpose of Rule 41(c), N.D.R.Crim.P., is to protect citizens from being subjected to the trauma of unwarranted nighttime searches. Courts have long recognized that nighttime searches constitute greater intrusions on privacy than do daytime searches." *State v. Schmeets,* 278 N.W.2d 401, 410 (N.D.1979).

■ [¶ 10] When analyzing what constitutes probable cause for a nighttime warrant, we have previously stated,

> Although there may be a variety of circumstances that justify the authorization of a nighttime search, we have indicated that probable cause for a nighttime search exists upon a showing that the evidence sought may be quickly and easily disposed of, and we have taken judicial notice that drugs are such evidence.

*Knudson,* 499 N.W.2d at 875 (citations omitted). To the extent our prior decisions approved a per-se rule justifying the issuance of nighttime warrants in drug cases, they are overruled. *See Herrick,* 1997 ND 155, ¶ 21, 567 N.W.2d 336 (overruling per-se rule allowing no-knock warrants in drug cases). "Merely alleging the presence of marijuana and methamphetamine does not allow one to infer the drugs were easily disposable." *State v. Utvick,* 2004 ND 36, ¶ 21, 675 N.W.2d 387. An officer must set forth some facts for believing the evidence will be destroyed other than its mere existence. *See Herrick,* at ¶ 23 (noting an insufficiency of proof when an officer offered no reason for the no-knock warrant other than the drugs were easily disposable).

[¶ 11] In *State v. Berger,* 285 N.W.2d 533 (N.D.1979), we concluded a nighttime warrant was properly issued when the "property sought would probably be removed or destroyed because it could be easily disposed of if the search warrant was not promptly served." *Id.* at 539. The evidence sought included marijuana and marked bills used to purchase marijuana from Berger earlier that night. *Id.* at 534–38. A survey of other jurisdictions reveals similar justifications for nighttime warrants. *See, e.g., Arizona v. Jackson,* 117 Ariz. 120, 571 P.2d 266, 268 (1977) (finding nighttime warrant proper when presented with evidence of nighttime drug sales); *Arizona v. Eichorn,* 143 Ariz. 609, 694 P.2d 1223, 1227–28 (Ct.App.1984) (finding evidence of two suspected prior nighttime drug sales, rather than mere allegations drugs are sold at night, was sufficient for a nighttime warrant because the drugs might not be there in the morning); *Idaho v. Fowler,* 106 Idaho 3, 674 P.2d 432, 439–40 (Ct.App.1983) (finding a nighttime warrant was properly issued when surveillance established nighttime drug sales, and it was reasonable to believe the drugs might not be present by daybreak); *People v. Walker,* 250 Cal.App.2d 214, 58 Cal.Rptr. 495, 498 (1967) (finding a nighttime warrant was proper when the defendant was not home during the day and often took the drugs with him); *People v. Mardian,* 47 Cal.App.3d 16, 121 Cal.Rptr. 269, 281–82 (1975) (finding a nighttime warrant was proper when defendant was moving the contraband and would be gone by six a.m.).

■ [¶ 12] In Fields' case, the magistrate authorized the nighttime warrant because of "the odd hours maintained by the subject, and the propensity to violence demonstrated by the subject." Fields keeping odd hours is insufficient to justify a nighttime warrant. Rule 41(d), N.D.R.Crim.P., does not require the defen-

238

dant's presence during the execution of the warrant. The "odd hours" Fields kept were irrelevant because the warrant could have been executed whether or not he was actually present in his home. Furthermore, in *People v. Watson,* 75 Cal.App.3d 592, 142 Cal.Rptr. 245 (1977), the court found a defendant's late and inconsistent hours was not a sufficient justification for a nighttime warrant. *Id.* at 246–48. The court noted the officer had no information indicating the evidence would not be there in the morning. *Id.* at 248. Likewise, Fields' odd hours cannot support a finding of probable cause for the nighttime warrant. *See id.;* N.D.R.Crim.P. 41(d).

■ [¶ 13] The magistrate also noted Fields' propensity for violence as a justification for the nighttime warrant. However, the record does not support this conclusion. The only evidence the magistrate could have relied on for support is the gun obtained during the prior illegal search of Fields' vehicle. Generally, the mere belief firearms are present in a home, without any other supporting evidence, is insufficient to justify a nighttime warrant. *Cf. State v. Johnson,* 1999 ND 33, ¶ 12, 590 N.W.2d 192 (noting, standing alone, a reasonable belief a firearm is present is not enough to justify a no-knock warrant). The magistrate was not presented with any corroborating evidence showing Fields had a propensity for violence through a prior violent criminal history or other supporting information. The nighttime warrant cannot be justified by Fields' purported propensity for violence when it is unsupported by the record.

[¶ 14] Therefore, considering the totality of circumstances, the officer did not meet the burden necessary to demonstrate the need for a nighttime warrant. On this record, there is no evidence to support a finding of probable cause for a nighttime warrant. We conclude the search was unreasonable because probable cause for the nighttime warrant, as required under N.D.R.Crim.P. 41(c)(1), did not exist. The evidence obtained as a result of the unwarranted nighttime search must be suppressed.

IV

[¶ 15] Because the nighttime warrant was not supported by probable cause, we affirm the trial court's order suppressing the evidence obtained from the May 15, 2003, nighttime search of Fields' home.

[¶ 16] MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 17] I concur in the majority opinion. We rely on or distinguish many of our precedents involving "no-knock" warrants in deciding the issue of the validity of a search warrant authorizing a nighttime search. Indeed, much of the underlying constitutional rationale is the same, and, under our current statutes and rules, probable cause is required for both the "no-knock" and nighttime search warrants. We have rejected a per-se rule justifying a "no-knock" warrant and we now reject a per-se rule on the issuance of nighttime warrants.

[¶ 18] I write separately to note that while we reject the per-se presumption that drugs are "easily disposed of" to justify either the "no-knock" or nighttime search warrant, the term "easily disposed of" has significantly different temporal meanings in the two contexts. In the "no-knock" warrant the term "easily disposed of" refers to the ability to dispose of drugs in the very brief time between the knock and the entry if a knock were required. In the context of the nighttime search

warrant the time which would elapse between execution and the entry, if no nighttime search warrant were issued, is much greater and the term "easily disposed of" logically refers to disposition other than, for example, flushing down the toilet or swallowing the drug. Thus evidence that a subject of a search warrant consumed or delivered drugs within a few hours of their receipt or made deliveries in the nighttime hours would justify issuance of a nighttime search warrant. Perhaps that is what the magistrate, relying on similar words Officer Eisenmann used in testifying at the hearing on the Application for Search Warrant, meant in this instance when authorizing the nighttime warrant because of "the odd hours maintained by the subject. . . ." However that is far from clear to me and it would be speculation at best to determine that is what the officer or magistrate meant and, further, that meaning would not be substantiated by the evidence offered in support of the Application.

[¶ 19] DALE V. SANDSTROM, J., concurs.