2006 ND 223

**Paul Joseph SAMBURSKY, Petitioner
and Appellant,**

v.

**STATE of North Dakota, Respondent
and Appellee.**

Nos. 20050330, 20050331, 20050032,
20050033, 20050034, 20050035.

Supreme Court of North Dakota.

Nov. 7, 2006.

Rebecca J. Heigaard McGurran, Grand Forks, ND, for petitioner and appellant; submitted on brief.

David T. Jones, Assistant State's Attorney, Grand Forks, ND, for respondent and appellee; submitted on brief.

KAPSNER, Justice.

[¶ 1] Paul Sambursky appeals from an order denying his application for post-conviction relief. We conclude the district court did not err in determining Sambursky's guilty plea was made knowingly and voluntarily, but conclude Sambursky raised genuine issues of material fact on his claim for ineffective assistance of counsel. Sambursky is entitled to an evidentiary hearing on his ineffective assistance of counsel claim. Therefore, the order denying the application for post-conviction relief is affirmed in part and reversed in part.

I

[¶ 2] In 2001 and 2002, a series of sexual assaults occurred in Grand Forks. In early 2003, Sambursky was charged with five counts of gross sexual imposition and one count of disorderly conduct arising out of those incidents.

[¶ 3] Sambursky and the State reached a plea agreement, and Sambursky entered pleas of guilty to the charges. The district court, after reviewing the plea agreement and a pre-sentence investigation report, rejected the plea agreement. An amended plea agreement was reached, and Sambursky again agreed to plead guilty to the charges. Under the terms of the amended plea agreement, the State agreed to recommend that Sambursky be sentenced to a total of 30 years' incarceration, with an additional 50 years suspended. The agreement provided that Sambursky would not face more than 30 years' incarceration, but expressly allowed him to present testimony and argument requesting a downward departure from the 30–year recommendation.

[¶ 4] The district court accepted Sambursky's guilty pleas under the amended agreement and sentenced him to 30 years' incarceration, with the additional 50 years suspended. Sambursky subsequently filed a motion for reduction of his sentence, to give credit for time served, and to amend his conditions of probation. The court de-

nied the motion to reduce Sambursky's sentence, but granted credit for time served and amended the conditions of probation to clarify that Sambursky could see his children.

[¶ 5] In December 2004, Sambursky applied for post-conviction relief, alleging his guilty plea was not entered voluntarily because he did not fully understand the consequences of his plea and he received ineffective assistance of counsel. Sambursky filed an affidavit in support of his petition, providing in pertinent part:

Before I entered into any sort of plea negotiations I specifically asked my attorney a number of times if I had to serve any sort [of] minimum amount of time. He told me "No". I also told my attorney that some of the inmates in the ... Corrections Center informed me about some sort of minimum amount of time I had to serve because my crime was violent, he told me that they were misinformed and that he will check just to make sure. He later told me that he had done some checking and even called the parole board and other staff at the State Prison and that after I served at least one year I would be eligible for parole consideration. I also asked [the judge] if I had to serve any minimum amount of time, and she told me that "No, none of these sentence[s] included any minimum mandatory terms of imprisonment." ... When I got to NDSP I was told that ... I must serve a minimum of 85% of my time before I can be considered for any sort of early release. ... Had I known that I would have to serve 30 years in prison I would have never signed a plea agreement. Furthermore, ... I learned that ND law says that the court IS required to advise me of a mandatory minimum punishment. When I learned of this I requested relief from [the judge] in the form of a "Rule 35" motion and she basically

told me to apply for pardon and denied my motion.

. . . .

I also feel that my attorney was ineffective for a number of reasons. I already told you that he lied/misinformed me about the plea agreement. Had I known the truth I would have never signed that paper. He also told me that I could expect to be out in 8–10 years with good behavior. The truth is I cannot expect to be out for 25 years. . . .

[¶ 6] The State moved for summary dismissal of the application, alleging Sambursky had failed to raise genuine issues of material fact on the voluntariness of his plea or ineffective assistance of counsel. The district court summarily denied Sambursky's application for post-conviction relief. Sambursky has appealed to this Court, alleging (1) his guilty plea was not voluntary because he was not informed by the district court that on account of the nature of his crimes, he would be required to serve 85 percent of the sentence imposed and (2) he received ineffective assistance of counsel.

## II

[¶ 7] A district court may summarily dismiss an application for post-conviction relief if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. N.D.C.C. § 29–32.1–09(1); *Johnson v. State*, 2006 ND 122, ¶ 19, 714 N.W.2d 832; *Heyen v. State*, 2001 ND 126, ¶ 6, 630 N.W.2d 56. We review an appeal from summary denial of post-conviction relief as we would review an appeal from a summary judgment. *Johnson*, at ¶ 19; *Heyen*, at ¶ 6. The party opposing the motion for summary dismissal is entitled to all reasonable inferences to be drawn from the evidence and is entitled to an evidentiary

hearing if a reasonable inference raises a genuine issue of material fact. *Heyen,* at ¶ 6. For summary judgment purposes, the evidentiary assertions of the party opposing the motion are assumed to be true. *Dinger v. Strata Corp.,* 2000 ND 41, ¶ 14, 607 N.W.2d 886. Ineffective assistance of counsel issues are mixed questions of law and fact, which are fully reviewable on appeal. *Heckelsmiller v. State,* 2004 ND 191, ¶ 5, 687 N.W.2d 454.

### III

[¶ 8] Sambursky alleges his guilty plea was not made knowingly and voluntarily, because the district court did not advise him that under N.D.C.C. § 12.1–32–09.1, he would be required to serve 85 percent of the sentences imposed because of the violent nature of some of his crimes. Sambursky contends the 85 percent rule is a mandatory minimum sentence that must be disclosed to the defendant under N.D.R.Crim.P. 11 before a guilty plea is accepted.

[¶ 9] A guilty plea must be entered knowingly, intelligently, and voluntarily to be valid. *State v. Raulston,* 2005 ND 212, ¶ 11, 707 N.W.2d 464; *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Rule 11, N.D.R.Crim.P., requires the district court to advise the defendant of certain rights, including any mandatory minimum sentence, before accepting a guilty plea. *Raulston,* at ¶ 11; *State v. Magnuson,* 1997 ND 228, ¶¶ 16, 18, 571 N.W.2d 642. The requirement to advise the defendant under N.D.R.Crim.P. 11 is mandatory and binding upon the court. *State v. Feist,* 2006 ND 21, ¶ 24, 708 N.W.2d 870; *State v. Farrell,* 2000 ND 26, ¶ 9, 606 N.W.2d 524; *Magnuson,* at ¶ 16.

[¶ 10] We addressed the precise issue raised by Sambursky in *Raulston* and *Magnuson.* We explicitly held the 85 percent service requirement of N.D.C.C. § 12.1–32–09.1 imposes a condition of parole, not a mandatory minimum sentence requiring disclosure by the district court under N.D.R.Crim.P. 11(b)(1)(H). *Raulston,* 2005 ND 212, ¶ 12, 707 N.W.2d 464; *Magnuson,* 1997 ND 228, ¶ 21, 571 N.W.2d 642. The 85 percent service requirement does not require any minimum sentence, but it does require service of 85 percent of any incarceration sentence before parole eligibility. A district court's failure to advise the defendant of the implications of the 85 percent service requirement does not affect the voluntariness of the plea. *Magnuson,* at ¶ 21.

[¶ 11] We conclude the district court did not err in finding Sambursky's guilty plea was knowingly and voluntarily made.

### IV

[¶ 12] Sambursky alleges he received ineffective assistance of counsel because his attorney did not inform him of the 85 percent service requirement under N.D.C.C. § 12.1–32–09.1. Sambursky claims his affidavit in support of his application for post-conviction relief created a genuine issue of material fact precluding summary dismissal of his ineffective assistance of counsel claim.

[¶ 13] The Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. *Wright v. State,* 2005 ND 217, ¶ 10, 707 N.W.2d 242; *Laib v. State,* 2005 ND 187, ¶ 9, 705 N.W.2d 845. A post-conviction relief petitioner alleging ineffective assistance bears the burden of proving two elements or prongs. *Johnson,* 2006 ND 122, ¶ 20, 714 N.W.2d 832 (citing *Garcia v. State,* 2004 ND 81, ¶ 5, 678 N.W.2d 568 and *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (providing the

analytical framework for ineffective assistance claims)); *Wright*, at ¶ 10. First, the petitioner must prove that the attorney's performance fell below an objective standard of reasonableness. *Johnson*, at ¶ 20; *Wright*, at ¶ 10. An attorney's performance is measured considering the prevailing professional norms. *Johnson*, at ¶ 20. The defendant must overcome the strong presumption that counsel's representation fell within the wide range of reasonable professional assistance, and courts must consciously attempt to limit the distorting effect of hindsight. *Wright*, at ¶ 10; *Laib*, at ¶ 9. Second, the petitioner must show that the attorney's deficient performance prejudiced him. *Johnson*, at ¶ 20; *Wright*, at ¶ 10. In order to meet this standard, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Sambursky's affidavit raises genuine issues of material fact under both prongs.

## A

 [¶ 14] Sambursky argues his attorney was ineffective because he provided misinformation about the length of time he will serve in the state penitentiary under the plea agreement. In order to avoid summary dismissal of his claims, Sambursky must present some evidence that his attorney's performance fell below an objective standard of reasonableness. *Johnson*, 2006 ND 122, ¶ 20, 714 N.W.2d 832; *Wright*, 2005 ND 217, ¶ 10, 707 N.W.2d 242. He must also overcome a presumption that his attorney's performance fell within the broad range of reasonableness. *See Wright*, at ¶ 10. In making such a determination, "the court must consider all circumstances and decide whether there were errors so serious that defendant was not accorded that 'counsel' guaranteed by

the Sixth Amendment." *Klose v. State*, 2005 ND 192, ¶ 10, 705 N.W.2d 809 (quoting *Mathre v. State*, 2000 ND 201, ¶ 3, 619 N.W.2d 627).

[¶ 15] If Sambursky's assertions are taken as true for summary dismissal purposes, his attorney committed a serious error by misinforming him of the effects of the law. We addressed a similar issue in *Raulston*, where we stated that it is unlikely that an attorney's failure to inform a defendant of the 85 percent service requirement under N.D.C.C. § 12.1–32–09.1 would fall outside of the wide range of reasonable performance. 2005 ND 212, ¶ 15, 707 N.W.2d 464. However, the facts in that case substantially differ from those presented here.

[¶ 16] In *Raulston*, the defendant pled guilty to interference with an emergency call and aggravated assault. *Id.* at ¶ 2. Before Raulston was incarcerated, he violated several conditions of his probation. *Id.* at ¶ 3. The district court held a hearing to address Raulston's conduct, where the court "explained the minimum and maximum penalties of the underlying convictions and informed Raulston of the possible consequences of an admission. Raulston then admitted the probation condition violations without benefit of a plea agreement." *Id.* Raulston was sentenced to five years' incarceration with three and one-half years suspended. *Id.* at ¶ 4. At the hearing's conclusion, the district court stated, "[w]ho knows, you might be out—back here in eight, nine months if you go through the process right." *Id.*

[¶ 17] Due to the nature of Raulston's underlying offenses, the court's statement was incorrect. *Id.* at ¶ 5. Raulston's aggravated assault conviction triggered the service requirement of N.D.C.C. § 12.1–32–09.1. *Raulston*, 2005 ND 212, ¶ 5, 707 N.W.2d 464. Raulston argued the district

court's failure to inform him of the 85 percent service requirement was "akin to the failure to inform a criminal defendant of a mandatory minimum sentence. . . ." *Id.* at ¶ 11. We disagreed, holding that the requirement was a parole condition, not a minimum mandatory sentence and the district court's failure to inform a defendant of it, although discouraged, was not improper. *Id.* at ¶ 12.

[¶ 18] In this case, however, Sambursky asserts his attorney did more than merely fail to inform him of a possible parole condition. He claims his attorney actively misinformed him of the effects of the law. Instead of the situation presented in *Raulston*, Sambursky asserts that his attorney told him that he would only serve "8–10 years" of his 30–year sentence. He also claims his attorney purported to have researched the issue and called the parole board to support his position. These assertions, if taken as true under our summary judgment jurisprudence, indicate Sambursky's attorney actively misinformed him of the length of time he would serve under the plea agreement.

[¶ 19] *Raulston* does not go so far as to hold that providing misinformation is the same as failing to provide information at all. *Id.* at ¶¶ 15–16. Therefore, *Raulston* is not controlling in this situation.

[¶ 20] Sambursky's affidavit states he asked whether he "had to serve any sort [of] minimum amount of time." Construing all reasonable inferences in Sambursky's favor, the affidavit can reasonably be read to have inquired into how much time of his sentence he would actually serve. The actual time a defendant will serve and the defendant's parole eligibility could be important factors in considering a plea agreement. Sambursky's affidavit raises an issue of material fact regarding whether he was asking about the actual time he would serve under the plea agree-

ment and whether his attorney's advice was objectively deficient when the attorney advised him of the length of time he would actually serve. Accordingly, Sambursky is entitled to an evidentiary hearing. *Heyen*, 2001 ND 126, ¶ 6, 630 N.W.2d 56 (providing that a petitioner is entitled to an evidentiary hearing if a reasonable inference from the evidence raises an issue of material fact).

[¶ 21] If a hearing does establish that the assertions in Sambursky's affidavit are correct, Sambursky's attorney fell below the standard of reasonable assistance when he actively misinformed his client about the effects of the law. *Hill*, 474 U.S. at 62, 106 S.Ct. 366 (White, J., concurring), providing:

> Were it not for the misinformation in the plea statement-had petitioner's attorney known of a prior conviction and still informed petitioner that he would be eligible for parole after serving one-third of his sentence-petitioner would be entitled to an evidentiary hearing and an opportunity to prove that counsel's failure to advise him of the effect of [the repeat offender statute] amounted to ineffective assistance of counsel. The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the *Strickland* analysis adopted by the majority, as such an omission cannot be said to fall within "the wide range of professionally competent assistance" demanded by the Sixth Amendment.

(citing *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). Therefore, Sambursky has raised a genuine issue of fact under the "performance" prong of the *Strickland* analysis.

### B

[¶ 22] To meet the second prong of his ineffective assistance of counsel

claim, Sambursky must also show that he was prejudiced by his attorney's misinformation. *Hill,* 474 U.S. at 59, 106 S.Ct. 366 (discussing the second prong of the *Strickland* analysis); *Johnson,* 2006 ND 122, ¶ 20, 714 N.W.2d 832. Sambursky's affidavit raises an issue of fact under the "prejudice" prong because he asserts he was induced into pleading guilty based on the erroneous advice of his attorney.

[¶ 23] The United States Supreme Court stated that "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59, 106 S.Ct. 366. In *Hill,* just as in this case, the defendant filed an application for post-conviction relief, claiming his guilty plea was involuntary because he received ineffective assistance of counsel in that his attorney advised him he would be eligible for release. *Id.* at 53, 106 S.Ct. 366. Hill's attorney misinformed him about the actual length of time he would serve under a plea agreement, telling him that he was eligible for parole after serving one-third of his sentence. *Id.* at 54, 106 S.Ct. 366. In fact, unknown to Hill's counsel, Hill was a second offender and, by operation of a repeat offender statute, he was required to serve one-half of his sentence. *Id.* at 54–55, 474 U.S. 52. However, the Supreme Court held that Hill's ineffective assistance claim failed because he did not allege that had his attorney correctly informed him about his parole eligibility date, he would not have pled guilty and insisted on going to trial. *Id.* at 60, 106 S.Ct. 366.

[¶ 24] Sambursky's affidavit, on the other hand, makes those assertions. Unlike in *Hill,* Sambursky's affidavit alleges that his attorney misinformed him of the effects of the law and that he would not

have pleaded guilty to the charges had he known about the law requiring him to serve 85 percent of his sentence. Therefore, *Hill's* underlying proposition, that a post-conviction relief petitioner can assert his attorney's performance is deficient because the attorney misinforms him about the law and he is prejudiced by his attorney's deficiency, controls here. *Id.* at 59–60, 106 S.Ct. 366.

[¶ 25] *Hill's* holding has been reaffirmed by the Supreme Court. In *Roe v. Flores–Ortega,* 528 U.S. 470, 485, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), the Supreme Court stated:

In *Hill,* we considered an ineffective assistance of counsel claim based on counsel's allegedly deficient advice regarding the consequences of entering a guilty plea. Like the decision whether to appeal, the decision whether to plead guilty (i.e., waive trial) rested with the defendant and, like this case, counsel's advice in *Hill* might have caused the defendant to forfeit a judicial proceeding to which he was otherwise entitled. We held that "to satisfy the 'prejudice' requirement [of *Strickland* ], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

This Court has also recognized the *Hill* holding. *Ernst v. State,* 2004 ND 152, ¶ 10, 683 N.W.2d 891; *Abdi v. State,* 2000 ND 64, ¶ 29, 608 N.W.2d 292.

[¶ 26] In this case, Sambursky has clearly asserted that, but for counsel's statements misinforming him of the effect of the law, he would not have entered into the plea agreement and would have insisted on going to trial. The affidavit constitutes admissible, competent evidence raising genuine issues of material fact— whether Sambursky's attorney misin-

formed him of the relevant law regarding the sentence he would serve under the plea agreement and whether he was induced by this misinformation to enter into a plea agreement. *Kummer v. City of Fargo,* 516 N.W.2d 294, 297 (N.D.1994) (holding that a resisting party must present competent, admissible evidence by affidavit or other comparable means which raises an issue of material fact); *see also* N.D.R.Civ.P. 56(e). Accordingly, Sambursky has raised an issue of material fact concerning the second *Strickland* prong. *Flores–Ortega,* 528 U.S. at 485, 120 S.Ct. 1029; *Hill,* 474 U.S. at 59, 106 S.Ct. 366. As such, he is entitled to an evidentiary hearing. *Heyen,* 2001 ND 126, ¶ 6, 630 N.W.2d 56.

V

[¶ 27] We have considered the remaining issues and arguments raised by the parties and find them either unnecessary to our decision or without merit. We conclude the district court did not err in determining Sambursky's guilty plea was made knowingly and voluntarily, but conclude Sambursky raised genuine issues of material fact on his claim for ineffective assistance of counsel. Sambursky is entitled to an evidentiary hearing on his ineffective assistance of counsel claim. Therefore, the order denying the application for post-conviction relief is affirmed in part and reversed in part.

[¶ 28] GERALD W. VANDE WALLE, C.J., and DANIEL J. CROTHERS and MARY MUEHLEN MARING, JJ., concur.

SANDSTROM, Justice, concurring in part and dissenting in part.

[¶ 29] I concur in that part of the majority opinion concluding the district court did not err in finding Sambursky's guilty plea was knowingly and voluntarily made.

I disagree, however, with the conclusion that Sambursky raised genuine issues of material fact precluding summary disposition of his ineffective assistance of counsel claim, and I therefore dissent from Parts IV and V of the majority opinion.

[¶ 30] The majority concludes Sambursky has raised a genuine issue of material fact on whether his attorney's conduct fell below the standard of reasonable professional assistance under the "performance" prong of the *Strickland* test. *See* Majority Opinion at ¶¶ 20–21. Sambursky based his claim of ineffective assistance of counsel solely upon his allegation that his attorney did not advise him of the 85 percent service requirement under N.D.C.C. § 12.1–32–09.1. In *State v. Raulston,* 2005 ND 212, ¶ 15, 707 N.W.2d 464, this Court stated it was "unlikely" that counsel's failure to inform the defendant of the 85 percent service requirement would fall outside the wide range of reasonable professional assistance. *Raulston* therefore indicates that counsel's failure to advise the defendant of the 85 percent service requirement does not per se fall below the objective standard of reasonable representation. The majority at ¶¶ 18–19 suggests *Raulston* is distinguishable because Sambursky alleged that his attorney "actively misinformed" him of the effects of the law. Sambursky's affidavit filed with the application for post-conviction relief does not support either Sambursky's assertions or the majority's conclusion.

[¶ 31] Sambursky argued on appeal that "Mr. Sambursky's attorney did not inform him of the 85% rule even though he specifically asked about minimum time to serve for violent crimes." In his affidavit, Sambursky stated that "[b]efore I entered into any sort of plea negotiations I specifically asked my attorney a number of times if I had to serve any sort [of] minimum amount of time," and "I also told my attor-

ney that some of the inmates in the Grand Forks County Corrections Center informed me about some sort of minimum amount of time I had to serve because my crime was violent." Sambursky claimed his counsel responded "no" to these questions.

[¶ 32] The allegations in Sambursky's affidavit show, at best, that he asked whether there was a mandatory minimum sentence for the charged crimes. The 85 percent service requirement imposes a condition of parole, not a mandatory minimum sentence. *Raulston*, 2005 ND 212, ¶ 12, 707 N.W.2d 464; *State v. Magnuson*, 1997 ND 228, ¶ 21, 571 N.W.2d 642. Counsel therefore was not in error in responding in the negative when Sambursky asked if there was a mandatory minimum sentence. Furthermore, Sambursky's questions must be viewed in context. He alleged that these discussions took place "[b]efore I entered into any sort of plea negotiations." At that point, it would have been pure speculation to consider the application and effect of N.D.C.C. § 12.1–32–09.1 upon Sambursky's sentence. Prior to entering into plea negotiations, there remained a possibility that the charges might be reduced or Sambursky would not be sentenced to imprisonment, and in those instances the 85 percent requirement would not apply. *See* N.D.C.C. § 12.1–32–09.1 (85 percent rule applies only to certain enumerated offenses and only if the defendant receives a sentence of imprisonment). In this context, Sambursky's asking whether there was "some sort of minimum amount of time" indicates he was asking whether there was a mandatory minimum sentence.

[¶ 33] In addition, even after Sambursky entered into the plea agreements it was not a certainty that the 85 percent requirement of N.D.C.C. § 12.1–32–09.1 would apply. The plea agreements state the sentence was a recommendation only, and expressly indicated the trial court was "not bound by the recommendation." The court therefore could have imposed any sentence within the allowable range for Sambursky's offenses. Since there was no mandatory minimum sentence, the court could have imposed a sentence that did not include any period of incarceration. The 85 percent requirement under N.D.C.C. § 12.1–32–09.1 applies only if the defendant "receives a sentence of imprisonment."

[¶ 34] The majority at ¶ 26 further concludes Sambursky raised a genuine issue of material fact concerning the "prejudice" prong of the *Strickland* analysis. Sambursky alleged in his appellate brief that his affidavit stated "he would not have entered into plea agreements had he received information about the [85 percent] rule." Sambursky's affidavit, however, does not support that assertion. In the affidavit, Sambursky stated, "[h]ad I known that I would have to serve 30 years in prison I would have never signed a plea agreement," and "[h]ad I known the truth I would have never signed that paper." Sambursky certainly had to be aware of the possibility he would have to serve 30 years, inasmuch as the plea agreement explicitly provided for a recommendation of 30 years' incarceration. Furthermore, even with the application of N.D.C.C. § 12.1–32–09.1, Sambursky could serve a sentence significantly shorter than 30 years. In addition to the possible 15 percent reduction from the sentence imposed, the statute explicitly provides the 85 percent service rule does not apply if the sentence is commuted. N.D.C.C. § 12.1–32–09.1; *see also* N.D.C.C. ch. 12–55.1. Sambursky's affidavit says he would not have pleaded guilty had he known he would have to serve 30 years, not had he known about the statute.

[¶ 35] The party seeking summary dismissal of a petition for post-conviction relief may, in some cases, make an initial showing of a lack of a genuine issue of material fact by pointing out there is an absence of evidence to support the non-moving party's case. *Weaver v. State*, 2003 ND 47, ¶ 6, 658 N.W.2d 352; *Steinbach v. State*, 2003 ND 46, ¶ 12, 658 N.W.2d 355. The nonmoving party is then put on his proof to provide competent evidence to support his claim. *Vandeberg v. State*, 2003 ND 71, ¶ 6, 660 N.W.2d 568; *Weaver*, at ¶ 6. The party resisting the motion may not merely rely upon the pleadings or unsupported conclusory allegations, but must present competent, admissible evidence demonstrating a genuine issue of material fact. *Steinbach*, at ¶ 10.

[¶ 36] In this case, the State made an initial showing of a lack of evidence in the record to support Sambursky's claim of ineffective assistance of counsel, and he was put on his proof to present competent, admissible evidence raising a genuine issue of material fact on this issue. Sambursky failed to present evidence establishing a genuine issue of material fact. Accordingly, the district court did not err in summarily rejecting Sambursky's claim of ineffective assistance of counsel.

[¶ 37] I would affirm the district court's order denying Sambursky's application for post-conviction relief.

[¶ 38] Dale V. Sandstrom, J.