OPINION OF THE COURT
Rena K. Uviller, J.
This motion to suppress physical evidence raises two separate and distinct issues. The first is whether a nighttime search warrant may be authorized on the ground that the premises are of a sort commonly, but not exclusively, *277 operated at night, absent any further showing of necessity for nighttime execution. The second issue is whether a warrantless arrest within commercial premises that are closed to the public may be effected solely on the basis of a single observation, two weeks earlier, of criminal activity within those premises by the defendants.
On September 26,1980, the affiant officer applied for a warrant to search the subject premises, an after hours gambling casino, and three specified individuals therein. The property sought included a bar, bar stools, blackjack tables, chairs, and a cash register. Probable cause for the search rested upon the observations of a reliable undercover informant who, a week earlier, had seen the three inside the premises acting as doorman, bartender and dealer respectively. The informant’s observations were made between the hours of 6:00 a.m. and 7:15 a.m. The affidavit also stated that there had been previous complaints about these premises that had led to the arrest of several persons, none of whom were the subjects of the instant warrant.
The application sought entry between 4:00 and 8:00 a.m. “due to the fact that these are the hours commonly used by after hours gambling casinos and the criminal use of these objects can be established only while the club is operational.”
The warrant issued but was not executed until 8 days later, which was 15 days after the informant’s observations. The warrant was executed at 5:30 a.m. As a consequence, the three persons identified in the affidavit, plus a fourth individual, were arrested and charged with the instant Penal Law and Alcoholic Beverage Control Law violations.
Fourth Amendment law is replete with policy “‘disfavoring nighttime executions, nighttime intrusions, more characteristic of a “police state” lacking in the respect for due process and the right of privacy dictated by the U.S. Constitution and history’”. (Gooding v United States, 416 US 430, 460.) Accordingly, nighttime searches are intended to be the exception not the rule; recourse to nighttime entry has been tightly circumscribed by statute. The *278 Criminal Procedure Law authorizes searches after 9:00 p.m. and before 6:00 a.m. only upon a showing that the warrant “(i) cannot be executed between the hours of 6:00 a.m. and 9:00 p.m., or (ii) the property sought will be removed or destroyed if not seized forthwith”. (CPL 690.35, subd 3, par [a].)
In this case the warrant obviously could have been executed after 6:00 a.m. inasmuch as the undercover observations of illegal activity occurred after that hour, to wit, between 6:00 and 7:15 a.m. Indeed, the affidavit states that premises of this sort usually operate until 8:00 a.m., thus affording the police two daytime hours within which to execute the warrant. The fact that nighttime authorization might be more convenient because it would provide two extra hours leeway is hardly a showing that the warrant “cannot” be executed during the day.
Nor is there any suggestion that the property sought was likely to be removed or destroyed if not seized immediately. The very nature of the property, e.g., bars, blackjack tables, and bar stools, unlike drugs or other contraband, contradicts easy disposability. (Cf. People v Rose, 31 NY2d 1036.) Moreover, the fact that the officer waited eight days to execute the warrant belies any concern that the property would be removed from the premises if not seized forthwith.
Accordingly, since the affidavit upon which the nighttime warrant issued falls far short of the requirements for nighttime entry contained in the Criminal Procedure Law, the motion to controvert the warrant is granted.
The issue remains whether the informant’s observation of illegal activity within the premises two weeks earlier by three of the defendants, provided probable cause for their arrest (and a search incident thereto) without a warrant. The defendants argue that because the premises are not open to the public but require a bell and buzzer for admission, an arrest therein without a warrant is constitutionally impermissible per Payton v New York (445 US 573). This court declines to apply the Payton proscription against warrantless arrests to individuals employed in a closed-to-the-public gambling casino. Neither the logic nor the letter of Payton dictates such an extension.
*279 Quite apart from Payton, however, this case presents a rather unusual defect in the necessary elements of probable cause to arrest. There is no doubt that the arresting officer had probable cause to arrest at least three of the four people ultimately arrested. Upon the reliable report of a brother officer that he had earlier actually seen the three engaged in illegal activity, the usual ingredients of probable cause were amply satisfied. (See Aguilar v Texas, 378 US 108.) Accordingly, had the arresting officer encountered the defendants in a public place, an arrest without a warrant would have been lawful under both State statute and the Fourth Amendment.
In this instance, however, it was necessary for the police to gain official entry into locked premises. This they proceeded to do upon two-week-old information that three of the defendants had once before been seen inside. The “staleness” of the information is not relevant here for the purposes of determining whether a search warrant should have issued (see People v Loewel, 50 AD2d 483, affd 41 NY2d 609), since the warrant has been successfully controverted on other grounds. The question nonetheless remains whether the information was also stale for purposes of probable cause for a warrantless arrest.
No authority has been cited, nor any discovered, concerning this feature of the arrest. Yet it appears to me that when the police seek to apprehend specified persons within closed premises, in addition to the reasonable basis for the belief that those persons had committed a crime, the police must have reasonable grounds to believe that the specified individuals will be found within the subject premises at the time of officially gained entry.
In the instant case, there is nothing in the papers submitted, nor have any facts been made known, that suggest the satisfaction of this additional element that I hold to be necessary for probable cause to arrest. That three of the four defendants were seen on the premises on one occasion two weeks earlier is, without anything more, an insufficient basis to believe that they would be there still. There is no suggestion that they were regular employees in this establishment. Indeed, although arrests had been made in these premises on earlier occasions, these defendants were *280 not involved. Thus, there were insufficient grounds for the officer to gain official entry for purposes of arresting the four defendants in this case.
Nor does it avail the police that once inside, they may then have observed the three individuals described by the informant (plus the fourth defendant) engaged in illegal activity. As Mr. Justice Jackson has so succinctly stated, the police may not seek “to justify the arrest by the search and at the same time to justify the search by the arrest.” (Johnson v United States, 333 US 10, 16, 17.) An officer seeking access to private premises must have, before the intrusion, a valid basis in law for that intrusion: “Any other rule would undermine ‘the right of the people to be secure in their persons, houses, papers and effects,’ and would obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law.” (Johnson v United States, supra, p 17.)
Accordingly, since the arrest of the defendants lacked probable cause, there could be no legal search incident thereto. The motion to suppress the evidence is granted and the complaint is dismissed.