2007 ND 112

**Todd ROTH, Petitioner and Appellant,**

v.

**STATE of North Dakota, Respondent and Appellee.**

**No. 20060241.**

Supreme Court of North Dakota.

July 25, 2007.

Joe A. Johnson, Nelson, Blumer & Johnson, P.L.L.P., Fargo, ND, for petitioner and appellant.

Cynthia M. Feland, Assistant State's Attorney, Bismarck, ND, for respondent and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Todd A. Roth appealed from a district court order denying his application for post-conviction relief. Roth argues his trial and appellate counsel was plainly ineffective for failing to challenge the nighttime provision of the warrant issued to search his home. We affirm.

I

[¶ 2] In late August 2002, the State charged Roth with possession of methamphetamine, possession of drug paraphernalia, and manufacture of a controlled substance. Roth was charged after law enforcement searched his home with a warrant during the early morning hours on August 28, 2002. Roth's counsel filed a motion to suppress all evidence discovered in the search, arguing the warrant was not supported by probable cause and contained an illegal no-knock provision. The district court denied the motion to suppress. Roth entered a conditional guilty plea to the charges, reserving the right to appeal the adverse determination of the suppression motion.

[¶ 3] Roth's counsel continued to represent him on appeal and raised the same issues regarding probable cause and the no-knock provision. In *State v. Roth* (*Roth I* ), 2004 ND 23, ¶ 1, 674 N.W.2d 495, this Court affirmed. We concluded the officers had probable cause to search Roth's home because the supporting affidavit contained substantial evidence of drug activity, including an informant's tip that Roth was manufacturing methamphetamine, prior searches of Roth's home that resulted in discovery of items indicating drug trafficking, and Roth's association with other people suspected of drug use and trafficking. *Id.* at ¶¶ 13–15, 18–20. We also held that the no-knock provision was not supported by probable cause, but the warrant was still valid because law enforcement had functionally excised the invalid no-knock provision by declining to use it. *Id.* at ¶¶ 24, 28.

[¶ 4] In January 2005, Roth filed an application for post-conviction relief, raising multiple issues related to the legality of the search and also claiming that he received ineffective assistance of counsel. The district court concluded Roth had already raised the same issues on direct appeal in *Roth I* and denied his application for post-conviction relief. Roth appealed, and in *Roth v. State* (*Roth II* ), 2006 ND 106, ¶ 1, 713 N.W.2d 513, this Court reversed the order denying post-conviction relief and remanded to the district court. We held that Roth was precluded from raising issues directly related to the issuance and execution of the search warrant, but that the district court should have considered the merits of his ineffective assistance of counsel claim. *Id.* at ¶¶ 8, 17.

[¶ 5] On remand, the district court considered Roth's claims of ineffective assistance of counsel by examining the record. Roth had claimed his counsel was ineffective for two major reasons. *Id.* at ¶ 9. First, Roth argued his counsel failed to raise the issue of whether the searching officers actually entered using the no-knock provision, despite their claims that they did not. *Id.* Second, he contended his counsel was ineffective for failing to chal-

lenge the nighttime provision of the search warrant both at the suppression hearing and on direct appeal. *Id.* Roth claimed his counsel was plainly defective based on the record, specifically the affidavit in support of the search warrant, and therefore he did not request an evidentiary hearing. *Id.* at ¶ 12.

[¶ 6] As to the first claim, the district court found that Roth's counsel had raised the issue of whether law enforcement entered using the no-knock provision in his reply brief about the suppression motion. Therefore, Roth's counsel was not ineffective in that regard. As to the second claim, the district court found that counsel had never challenged the validity of the nighttime provision of the search warrant. The district court did not decide whether the nighttime warrant was supported by probable cause, but rather concluded the evidence would have been admissible in any event under the inevitable discovery doctrine. Because Roth failed to show that the evidence obtained from the nighttime search would have been suppressed, the district court concluded he had not proven ineffective assistance of counsel and denied his application for post-conviction relief. On this appeal, Roth renews his claim of ineffective assistance of counsel, relying solely on the ground that counsel failed to challenge the legality of the nighttime search warrant.

## II

[¶ 7] The Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. *Sambursky v. State*, 2006 ND 223, ¶ 13, 723 N.W.2d 524. In order to prevail on a post-conviction claim of ineffective assistance, the petitioner bears a heavy burden. *Rümmer v. State*, 2006 ND 216, ¶ 10, 722 N.W.2d 528. The petitioner must prove that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the petitioner was prejudiced by counsel's deficient performance. *Matthews v. State*, 2005 ND 202, ¶ 10, 706 N.W.2d 74.

[¶ 8] As to the first prong, the petitioner must overcome the strong presumption that counsel's representation fell within the wide range of reasonable professional assistance. *Laib v. State*, 2005 ND 187, ¶ 9, 705 N.W.2d 845. An attorney's performance is measured considering the prevailing professional norms. *Sambursky*, 2006 ND 223, ¶ 13, 723 N.W.2d 524. In assessing the reasonableness of counsel's performance, courts must consciously attempt to limit the distorting effect of hindsight. *Id.* Courts must consider all the circumstances and decide whether there were errors so serious that defendant was not accorded the "counsel" guaranteed by the Sixth Amendment. *Klose v. State*, 2005 ND 192, ¶ 10, 705 N.W.2d 809.

[¶ 9] In order to meet the second prong, the petitioner must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Roth II*, 2006 ND 106, ¶ 10, 713 N.W.2d 513. The petitioner must prove not only that counsel's representation was ineffective, but must specify how and where counsel was incompetent and the probable different result. *Laib*, 2005 ND 187, ¶ 10, 705 N.W.2d 845. If it is easier to dispose of an ineffective assistance of counsel claim on the ground of lack of sufficient prejudice, that course should be followed. *Wright v. State*, 2005 ND 217, ¶ 11, 707 N.W.2d 242.

[¶ 10] Failure to file a pretrial suppression motion, by itself, does not equate to ineffective assistance of counsel. *Ernst v. State*, 2004 ND 152, ¶ 11, 683

N.W.2d 891. In order to prove an ineffective assistance claim based on counsel's failure to move to suppress evidence, the petitioner must show actual prejudice, not merely possible prejudice. *Id.* at ¶ 12. In *Kimmelman v. Morrison,* 477 U.S. 365, 373–75, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), the United States Supreme Court set forth the standard which applies to a petitioner's claim that counsel was ineffective for failing to raise a Fourth Amendment issue.

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Id.* at 375, 106 S.Ct. 2574; *see also Williams v. Locke,* 403 F.3d 1022, 1026 (8th Cir.2005); *Bailey v. Newland,* 263 F.3d 1022, 1029 (9th Cir.2001) ("[P]etitioner must show that he would have prevailed on the suppression motion, and that there is a reasonable probability that the successful motion would have affected the outcome."). Counsel is not ineffective for failing to make an argument that is meritless, either at trial or on appeal. *Aydelotte v. State,* No. CR 04–822, 2005 WL 3008619 2005 Ark. LEXIS 706, at *5 (Ark. Nov. 10, 2005); *see also Smith v. Murray,* 477 U.S. 527, 535–36, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (internal quotation omitted) (considering whether appellate counsel was ineffective and stating that the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy").

[¶ 11] The issue of ineffective assistance of counsel is a mixed question of law and fact which is fully reviewable on appeal. *Rümmer,* 2006 ND 216, ¶ 9, 722 N.W.2d 528. Assistance of counsel is plainly defective when the record affirmatively shows ineffectiveness of a constitutional dimension. *Roth II,* 2006 ND 106, ¶ 12, 713 N.W.2d 513.

### III

[¶ 12] Roth contends his trial and appellate counsel was plainly ineffective for failing to challenge the validity of the nighttime provision of the search warrant. In particular, Roth argues he would have prevailed on the suppression motion if his counsel had raised the issue of whether the nighttime warrant was supported by probable cause. Additionally, he claims the district court erroneously applied the inevitable discovery doctrine in this case.

[¶ 13] Because Roth argues that his counsel was plainly defective, we do not have the benefit of a post-conviction hearing transcript or an explanation from counsel. Rather, the merit of Roth's claim must be determined solely from the facts in the record, particularly the affidavit in support of the search warrant. The record reveals the following facts.

[¶ 14] On August 20, 2002, Deputy Dion Bitz of the Metro Area Narcotics Task Force applied for a warrant to search Roth's residence at 704 Concord Drive in Bismarck, North Dakota. Deputy Bitz's affidavit in support of the search warrant stated, in relevant part:

4. Todd Roth is suspected of manufacturing methamphetamine at 704 Concord Drive.

5. The Task Force has received information from various sources regarding Todd Roth manufacturing controlled substances. In May, 2002, I observed Carla Haff's and Perry Anderson's vehi-

cles at the Todd Roth residence.... Perry Anderson resides in Mandan and is frequently observed at Paul Ereth's residence in Mandan. The Task Force has received intelligence regarding Paul Ereth trafficking in narcotics.

....

9. On August 1, 2002, I interviewed a confidential source who stated that Todd Roth cooks methamphetamine in the basement of his residence twice weekly and the source had been at the Todd Roth residence while he was cooking methamphetamine.

10. Surveillance has been conducted on the residence at 704 Concord Drive. On August 7, 2002, surveillance began at 11:30 p.m. [L]ights were on in the basement of the residence. License checks were run on the vehicles parked in front of the home. One vehicle was registered to Perry Anderson, the other was registered to Rollin Manufacturing, New Salem. Shortly before 1:00 a.m., the basement lights were shut off and Perry Anderson left the residence. An unknown person left the residence with Perry Anderson, walked to the mailbox, looked around the area as Perry Anderson drove away and then returned to the residence.

....

13. On August 17, 2002, a Confidential Informant (CI), who was the confidential source that officers spoke with on August 1, 2002, witnessed Todd Roth cooking methamphetamine at his residence. The CI stated when the CI walked in the residence, there was a cloud of smoke hanging in the residence. The CI stated that Todd Roth is using the anhydrous method to cook due to the ammonia smell present while the CI was at the residence. The CI observed Todd Roth scraping a methamphetamine-like substance from a plate. The

CI described methamphetamine-like substance as a white substance, some in rock form, some in powder form.

14. The CI has also provided information in the past that was independently corroborated and resulted in successful State and Federal prosecutions. The CI has provided information which recently led to the arrest of a narcotics trafficker. Information the CI has provided on other local drug traffickers has been independently corroborated.

15. I am requesting to be allowed to execute the warrant at any time of the day or night. This is necessary because the information gathered and surveillance conducted indicates that Todd Roth manufactures methamphetamine at night.

Based on the information contained in Deputy Bitz's affidavit, the magistrate issued a no-knock warrant to search Roth's residence "anytime day or night" within the next ten days.

[¶ 15] On August 28, 2002, law enforcement officers entered Roth's home and executed the search warrant from about 12:37 a.m. until 2:40 a.m. Deputy Bitz testified that he waited to conduct the search until he knew Roth was at home. The officers knocked and announced their presence, and then entered with a breaching device when nobody opened the door. When the officers entered the residence, they observed Roth and two other men standing nearby looking at them. As a result of items discovered in the search, Roth was charged with possession of methamphetamine, possession of drug paraphernalia, and manufacture of a controlled substance.

A

[¶ 16] We note that the district court did not decide whether there was probable cause for a nighttime search. Rather, the

district court immediately applied the inevitable discovery doctrine to hold that the evidence would have been admissible even if there was no probable cause. Before reaching a secondary issue like inevitable discovery, the district court should have decided whether there was probable cause to justify a nighttime warrant. Because the issue of probable cause may be dispositive on appeal, the district court should make a ruling on that issue.

[¶ 17] Ultimately, in this case, the district court held that Roth did not receive ineffective assistance of counsel because he would not have prevailed on his suppression motion. We will not disturb a correct result merely because the district court assigned an incorrect reason, if the result is the same under the correct law and reasoning. *Klose v. State*, 2005 ND 192, ¶ 21, 705 N.W.2d 809. Therefore, we will consider whether Roth would have prevailed if he had raised the issue of lack of probable cause for a nighttime search.

[¶ 18] Whether probable cause exists to issue a search warrant is a question of law which is fully reviewable on appeal. *State v. Utvick*, 2004 ND 36, ¶ 7, 675 N.W.2d 387. We generally defer to a magistrate's determination of probable cause if there was a substantial basis for the conclusion, and doubtful or marginal cases should be resolved in favor of the magistrate's determination. *Id.*

[¶ 19] It is well established that search warrants may be issued only upon a showing of probable cause. *See, e.g., State v. Ebel*, 2006 ND 212, ¶ 12, 723 N.W.2d 375. However, if the warrant applicant seeks authorization for a nighttime search, an additional showing is required. Rule 41(c)(1)(E), N.D.R.Crim.P., provides, "The warrant may be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for rea-

sonable cause shown, authorizes its execution at times other than daytime." We have construed the term "reasonable cause" as synonymous with "probable cause" for the purpose of issuing a nighttime warrant. *Roth II*, 2006 ND 106, ¶ 14, 713 N.W.2d 513 (citing *State v. Herrick*, 1997 ND 155, ¶ 19, 567 N.W.2d 336). Therefore, under N.D.R.Crim.P. 41(c)(1)(E), the magistrate may issue a nighttime search warrant only if there is a showing of probable cause to justify a nighttime search. *Roth II*, at ¶ 14; *State v. Fields*, 2005 ND 15, ¶ 9, 691 N.W.2d 233.

[¶ 20] The purpose of Rule 41(c) is to protect citizens from being subjected to the trauma of unwarranted nighttime searches. *Fields*, 2005 ND 15, ¶ 9, 691 N.W.2d 233. Courts have long recognized that nighttime searches constitute greater intrusions on privacy than do daytime searches. *Roth II*, 2006 ND 106, ¶ 14, 713 N.W.2d 513.

[¶ 21] However, despite the limitations of Rule 41(c), nighttime searches are permissible in certain circumstances. This Court has held that probable cause for a nighttime search exists upon a showing that the evidence sought may be quickly and easily disposed of if the warrant is not promptly executed. *Fields*, 2005 ND 15, ¶¶ 10–11, 691 N.W.2d 233 (citations omitted). An officer must set forth some facts for believing the evidence will be destroyed other than its mere existence. *Id.* at ¶ 10. Mere allegations about the presence of drugs do not lead to the inference that the drugs are easily disposable. *Id.* Furthermore, the mere fact that a person keeps odd hours does not support a finding of probable cause for a nighttime search. *Id.* at ¶ 12.

[¶ 22] We have also recognized that "there may be a variety of circumstances that justify the authoriza-

tion of a nighttime search." *Id.* at ¶ 10 (citation omitted). The "reasonable cause" standard contained in N.D.R.Crim.P. 41(c)(1)(E) focuses upon the necessity for executing the warrant at a time other than the daytime. *See* Explanatory Note, N.D.R.Crim.P. 41; 2 Wayne R. LaFave, *Search and Seizure* § 4.7(b), at 650–51 n. 24 (4th ed.2004) (analyzing the corresponding provision in Fed.R.Crim.P. 41); *see also Commonwealth v. Camperson,* 437 Pa.Super. 355, 650 A.2d 65, 70 (1994) (holding that "reasonable cause" for a nighttime search under the state rules of criminal procedure "requires a showing that the search cannot wait until morning"). Necessity for a nighttime search exists "where there is a reasonable possibility that the fruits, instrumentalities or evidence of crime sought would not be expected to be at the searched premises during the day or might be removed or dissipated if the search is delayed." *State v. Richardson,* 80 Hawai'i 1, 904 P.2d 886, 890 (1995) (quoting *State v. Brock,* 294 Or. 15, 653 P.2d 543, 546 (1982)).

[¶ 23] Courts have upheld nighttime searches when there was particularized evidence of drug trafficking, sales, or manufacture which occurred late at night or in the early morning hours. *See United States v. Randle,* 196 Fed.Appx. 676, 680 (10th Cir.2006) (upholding nighttime search when the affidavit in support of the warrant contained information that the defendant only sold drugs after 10 p.m.); *United States v. Tucker,* 313 F.3d 1259, 1261, 1266 (10th Cir.2002) (concluding search at 5:10 a.m. was reasonable because officers had information that the defendants may have been in the process of manufacturing meth, and there was a risk of destruction of evidence as well as the danger of significant personal injury and property damage); *State v. Eichorn,* 143 Ariz. 609, 694 P.2d 1223, 1227–28 (Ct.App. 1984) (finding good cause for a nighttime

search when officers gathered evidence of two prior nighttime drug sales through surveillance); *Aydelotte v. State,* No. CR 04–822, 2005 WL 3008619, 2005 Ark. LEX-IS 706, at *8–9 (Ark. Nov. 10, 2005) (upholding nighttime search because officer had information that drug manufacturing would be done overnight, and there was a danger that the drugs and other components might be moved once the process was complete); *State v. Luckhardt,* No. C3–02–2026, 2004 WL 1153024, 2004 Minn. App. LEXIS 573, at *11–12 (Minn.Ct.App. May 25, 2004) (holding nighttime search was justified when officers had a limited window of time to catch the defendant with pre-recorded money after a controlled drug purchase); *Campbell v. State,* 651 P.2d 696, 698 (Okla.Crim.App.1982) (upholding nighttime search when officer had information that defendants would begin drug manufacturing at midnight, because it was reasonable to conclude that the drugs would have been moved or concealed after their manufacture); *Commonwealth v. Prokopchak,* 279 Pa.Super. 284, 420 A.2d 1335, 1339–40 (1980) (finding reasonable cause for a nighttime search when officer had information that defendant was carrying a large amount of marijuana and a co-conspirator was coming that night or the next day to take his share). *But see Fouse v. State,* 337 Ark. 13, 989 S.W.2d 146, 149 (1999) (concluding there was no justification for a nighttime search because a strong odor of ether emanating from a residence at 9 p.m. was not a reasonable basis for concluding that methamphetamine was to be removed or sold in the immediate future).

[¶ 24] However, courts have found no necessity for a nighttime search when the warrant could have been effectively executed during daytime hours. *See State v. Richardson,* 80 Hawai'i 1, 904 P.2d 886, 891–92 (1995) (holding that a nighttime

search was not reasonably necessary when drug transactions occurred throughout the night, but also in the early evening hours); *State v. Fitch,* 255 Neb. 108, 582 N.W.2d 342, 348 (1998) (finding no basis for a nighttime search when the affidavit stated only that known drug users were frequenting a residence and there was some evidence of drug activity based on a trash search); *People v. Miller,* 109 Misc.2d 276, 439 N.Y.S.2d 983, 985 (N.Y.City Crim.Ct. 1981) (concluding nighttime search was invalid because surveillance established that the illegal gambling activity continued into the daytime hours).

[¶ 25] Furthermore, courts have held that nighttime searches were illegal when the supporting affidavit contained boilerplate language or conclusory statements rather than particularized facts. *See Luckhardt,* 2004 WL 1153024, 2004 Minn. App. LEXIS 573, at *9 (stating that an officer seeking a nighttime warrant must present "something more than conclusory boilerplate language"); *Commonwealth v. Johnson,* 315 Pa.Super. 579, 462 A.2d 743, 745–46 (1983) (holding there was no reasonable cause for a nighttime search when the affidavit contained only information that defendant had drugs on the premises and the affiant's unsubstantiated belief that those substances would be sold by the next day); *State v. Rowe,* 806 P.2d 730, 731, 733–34 (Utah Ct.App.1991), *rev'd on other grounds,* 850 P.2d 427 (Utah 1992) (finding no valid basis for a nighttime search when the affidavit averred only that the suspect was storing drugs in his home, along with pre-printed language stating that the property sought could easily be destroyed or hidden).

[¶ 26] In this case, Deputy Bitz presented the magistrate with particularized information gathered through a confidential informant and surveillance. The confidential informant had been at Roth's resi-

dence and provided detailed information about the manner in which Roth cooked methamphetamine. The informant specifically stated that Roth cooked methamphetamine twice weekly in the basement of his residence. Deputy Bitz vouched for the informant's reliability and veracity in his supporting affidavit. *See Roth I,* 2004 ND 23, ¶¶ 8–15, 674 N.W.2d 495 (concluding that the informant's report supported a finding of probable cause). After receiving the informant's report that Roth regularly manufactured methamphetamine in his basement, law enforcement conducted surveillance on Roth's residence. When surveillance began at 11:30 p.m., lights were on in the basement. One of the vehicles parked outside was registered to Perry Anderson, who was suspected of involvement with drug use and trafficking. Shortly before 1:00 a.m., the basement lights were shut off, and Anderson left the residence.

[¶ 27] We conclude the information contained in Deputy Bitz's affidavit provided sufficient probable cause to justify a nighttime search. The confidential informant stated that Roth manufactured methamphetamine in his basement, and surveillance established that there was activity in the basement during the late nighttime hours. Surveillance also established that at least one other person connected with drug activity was in the residence at the time. These facts, taken together, indicate that Roth was likely manufacturing methamphetamine in his home at nighttime. Therefore, in order for law enforcement to catch Roth in the process of manufacturing methamphetamine, the search needed to be conducted at nighttime rather than in the daytime. If law enforcement searched Roth's residence at a time when he was not manufacturing, it was reasonably probable that much of the evidence of the manufacturing

process, including the methamphetamine itself, would have been removed from the premises. Nor is the evidence as convincing when the actual manufacturing is not in process. Section 19–03.1–23.1, N.D.C.C., provides an increased penalty for the manufacture or distribution of a controlled substance within one thousand feet of a school, but not for possession with intent. *See State v. Dennis*, 2007 ND 87, ¶ 1, 733 N.W.2d 241. For these reasons, law enforcement officers have a legitimate interest in catching a suspect in the act of manufacturing drugs.

[¶ 28] The facts at issue in this case create a close question. However, we resolve doubtful or marginal cases in favor of the magistrate's determination. We cannot say the magistrate erred in finding probable cause to justify a nighttime search when the affidavit contained particularized facts which, when read together, led to the reasonable conclusion that Roth was manufacturing methamphetamine at night.

[¶ 29] Because there was sufficient probable cause for a nighttime search, Roth would not have prevailed if his counsel had raised the issue either in a suppression motion or on direct appeal. Roth has not shown that he suffered actual prejudice because of counsel's failure to challenge the nighttime provision of the search warrant. Therefore, we conclude Roth has not met his heavy burden of proving ineffective assistance of counsel.

B

[¶ 30] Assuming, for the purpose of discussion only, that there was no probable cause for a nighttime search, the evidence would be admissible under the good faith exception to the exclusionary rule.

[¶ 31] The threshold question is whether the federal exclusionary rule ap-plies to a violation of N.D.R.Crim.P. 41(c)(1)(E). This Court has held that suppression is the appropriate remedy for an illegal nighttime search under Rule 41(c). *See State v. Fields*, 2005 ND 15, ¶ 14, 691 N.W.2d 233. The Explanatory Note to N.D.R.Crim.P. 41 further supports this approach:

> Rule 41 is an adaptation of Fed. R.Crim.P. 41 and is designed to implement the provisions of Article I, Section 8, of the North Dakota Constitution and the Fourth Amendment to the United States Constitution, which guarantee, "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized." To implement this constitutional protection, an illegal search and seizure will bar the use of such evidence in a criminal prosecution. The suppression sanction is imposed in order to discourage abuses of power by law enforcement officials in conducting searches and seizures.

Thus, the provision of Rule 41(c) governing nighttime warrants implicates substantive constitutional rights, particularly the right to be free from unreasonable searches and seizures under the Fourth Amendment. *Cf. State v. Utvick*, 2004 ND 36, ¶¶ 27–28, 675 N.W.2d 387 (reaching the same conclusion with regard to the statute governing no-knock warrants); *State v. Sakellson*, 379 N.W.2d 779, 784 (N.D.1985) (quoting *Ker v. California*, 374 U.S. 23, 38, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963)) (stating that "the method of entering the home may offend federal constitutional standards of reasonableness and therefore vitiate the legality of an accompanying search"). Be-

cause a violation of Rule 41(c)(1)(E) is tantamount to a violation of the Fourth Amendment, the federal exclusionary rule applies. *Cf. Utvick*, at ¶ 27. *But see Hudson v. Michigan*, —— U.S. ——, ——, ——, 126 S.Ct. 2159, 2165, 2168, 165 L.Ed.2d 56 (2006) (holding that a violation of the Fourth Amendment knock-and-announce rule does not require exclusion of evidence found in the ensuing search).

 [¶ 32] If the exclusionary rule applies when a statute or rule implicating substantive constitutional rights is violated, and the source of the exclusionary rule is the Fourth Amendment, then we must also consider the application of the good faith exception set forth in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984). *See State v. Herrick*, 1999 ND 1, ¶ 12, 588 N.W.2d 847; *see also United States v. Maholy*, 1 F.3d 718, 721–23 (8th Cir.1993) (holding that the fruits of a nighttime search were admissible under the good faith exception, even if the search violated the Fourth Amendment). Under the good faith exception to the federal exclusionary rule, suppression is not the appropriate remedy for an illegal search if an officer's reliance on the search warrant was objectively reasonable. *Utvick*, 2004 ND 36, ¶ 26, 675 N.W.2d 387. The good faith inquiry focuses upon whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. *State v. Van Beek*, 1999 ND 53, ¶ 25, 591 N.W.2d 112. However, an officer may not always reasonably rely upon the validity of a search warrant issued by a magistrate. *Id.* We have recognized four specific situations when the good faith exception does not apply because the officer's reliance on the warrant is not objectively reasonable:
(1) when the issuing magistrate was misled by false information intentionally or negligently given by the affiant; (2) when the magistrate totally abandoned

her judicial role and failed to act in a neutral and detached manner; (3) when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when a reasonable law enforcement officer could not rely on a facially deficient warrant.

*Herrick*, at ¶ 15 (citing *Leon*, at 923, 104 S.Ct. 3405). "[W]hen reviewing an officer's reliance upon a warrant, we must determine whether the underlying documents are devoid of factual support, not merely whether the facts they contain are legally sufficient." *United States v. McKneely*, 6 F.3d 1447, 1454 (10th Cir. 1993) (internal quotation omitted).

[¶ 33] Under the facts of this case, we conclude the good faith exception would apply because Deputy Bitz's reliance on the search warrant was objectively reasonable. There is no evidence that the issuing magistrate was misled by false information or failed to act in a neutral manner. The warrant itself was not facially deficient. Deputy Bitz presented particularized facts in the supporting affidavit which he gathered from a confidential informant and through surveillance. The information indicated that Roth was manufacturing methamphetamine in his residence, most likely in the nighttime. The affidavit was not so lacking in indicia of probable cause that Deputy Bitz's belief in its existence was entirely unreasonable. Therefore, Deputy Bitz reasonably relied on the issuing magistrate's determination that a nighttime warrant was justified.

## IV

[¶ 34] We conclude Roth would not have prevailed if his counsel had raised the issue of lack of probable cause for a nighttime search either in a suppression motion or on direct appeal. Because Roth did not

suffer actual prejudice as a result of counsel's failure to raise this issue, he did not receive ineffective assistance of counsel. The district court's order denying post-conviction relief is affirmed.

[¶ 35] DALE V. SANDSTROM, DANIEL J. CROTHERS and CAROL RONNING KAPSNER, JJ., concur.

MARING, Justice, dissenting.

[¶ 36] I respectfully dissent. I disagree with the majority that the officer's affidavit established probable cause for a nighttime search warrant. Therefore, I believe Roth's counsel was ineffective for failing to raise whether there was probable cause for a nighttime search warrant. I also do not believe the good faith exception saves the invalid nighttime search of Roth's residence. I would reverse the order denying post-conviction relief.

I. Ineffective Assistance of Counsel

[¶ 37] Roth argues his counsel was ineffective for failing to raise whether there was probable cause for a nighttime search warrant. Following *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court applies a two-part test to evaluate ineffective assistance of counsel claims. To prove he received ineffective assistance of counsel, Roth has the burden of proving his counsel's representation fell below an objective standard of reasonableness, and he was prejudiced by his counsel's deficient performance. *See Roth v. State* ("*Roth II*"), 2006 ND 106, ¶ 10, 713 N.W.2d 513. To establish the first element, Roth must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *See id.* For the second element, Roth must show there was a reasonable probability the result of the proceeding would have been different if not for his counsel's unprofessional errors. *See id.*

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Roth must specify how and where his counsel was incompetent and the probable different result. *See Laib v. State*, 2005 ND 187, ¶ 10, 705 N.W.2d 845.

[¶ 38] Roth argues the record shows his counsel was plainly defective. "Assistance of counsel is plainly defective when the record affirmatively shows ineffectiveness of a constitutional dimension or the defendant points to some evidence in the record to support the claim." *Roth II*, 2006 ND 106, ¶ 12, 713 N.W.2d 513.

[¶ 39] For the reasons I state below, Roth's counsel fell below an objective standard of reasonableness because he failed to raise whether there was probable cause for the issuance of a nighttime search warrant. Had Roth's counsel raised whether there was probable cause for a nighttime search warrant, the evidence seized during the nighttime search of Roth's residence would have been suppressed because it was illegally obtained. Without this evidence, there is a reasonable probability that the outcome of the proceeding against Roth would have been favorable to him. Therefore, I am of the opinion Roth received ineffective assistance of counsel.

II. Nighttime Search Warrant

[¶ 40] Probable cause is required for the issuance of a search warrant. *State v. Fields*, 2005 ND 15, ¶ 5, 691 N.W.2d 233. Under Rule 41(c)(1)(E), N.D.R.Crim.P., a "warrant may be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and *for reasonable cause shown*, authorizes its execution at times other than daytime." (Emphasis added.) We have concluded reasonable cause and probable cause are interchangeable. *State v.*

*Knudson,* 499 N.W.2d 872, 875 (N.D. 1993). The magistrate who issues a nighttime search warrant must find a sufficient showing of probable cause to justify the nighttime search. *Fields,* 2005 ND 15, ¶ 9, 691 N.W.2d 233.

[¶ 41] Our Court has stated that Rule 41(c)(1)(E), N.D.R.Crim.P., is meant to protect North Dakota's citizens "from being subjected to the trauma of unwarranted nighttime searches. Courts have long recognized that nighttime searches constitute greater intrusions on privacy than do daytime searches." *Fields,* 2005 ND 15, ¶ 9, 691 N.W.2d 233. Although there may be a variety of circumstances that justify the authorization of a nighttime search, we have indicated probable cause exists for a nighttime search warrant when there is a showing the sought-after evidence may be disposed of quickly and easily. *Id.* at ¶ 10. In *Fields,* at ¶ 10, our Court specifically held: "To the extent our prior decisions approved a per-se rule justifying the issuance of nighttime warrants in drug cases, they are overruled." The mere allegation that controlled substances are present at a residence does not allow for the inference that the controlled substances are easily disposable. *Id.; see also State v. Utvick,* 2004 ND 36, ¶ 21, 675 N.W.2d 387. A police officer, in an affidavit, must set forth some facts for his belief the evidence will be destroyed. *Fields,* at ¶ 10. The keeping of odd hours does not alone justify a nighttime search. *See id.* at ¶ 12. Our Court made it clear in *Fields* that we no longer would approve a nighttime search warrant issued on any less probable cause than is required for a no-knock search warrant in drug cases. *See id.* at ¶ 10.

[¶ 42] The majority points to two federal cases, *United States v. Randle,* 196 Fed.Appx. 676 (10th Cir.2006), and *United States v. Tucker,* 313 F.3d 1259 (10th Cir. 2002), in its analysis of nighttime searches.

Federal case law cannot be relied on for nighttime search warrant analysis in this state. In North Dakota, under N.D.R.Crim.P. 41(c)(1)(E), probable cause is required for the issuance of any nighttime search warrant. The United States Supreme Court "has never held that the Fourth Amendment prohibits nighttime searches, despite the disapproval voiced occasionally by a Justice in dissent." *United States v. Rizzi,* 434 F.3d 669, 675 (4th Cir.2006) (citing *Gooding v. United States,* 416 U.S. 430, 462, 464, 94 S.Ct. 1780, 40 L.Ed.2d 250 (1974) (Marshall, J. dissenting)). Federal law requires "good cause" under Rule 41(e), F.R.Crim.P., for a nighttime search warrant; however, federal drug cases are governed by 21 U.S.C. § 879, which has no special showing for nighttime search warrants. Therefore, federal case law on nighttime searches involving drugs is of very little relevance to our analysis unless we know that the search was considered under state law and that state has similar law to ours.

[¶ 43] The majority cites state court cases to support its conclusion that Bitz's affidavit provided sufficient probable cause to justify a nighttime search warrant. However, even assuming that all of these states require probable cause for a nighttime search warrant, I believe these cases actually support a conclusion that there was not probable cause to justify a nighttime search warrant in this case. In these cases, there were particularized facts supporting the conclusion that evidence would be disposed of by morning, by use, sale, or removal from the property. *See State v. Eichorn,* 143 Ariz. 609, 694 P.2d 1223, 1225–27 (Ct.App.1984) (holding there was good cause for a nighttime search when the affidavits listed two specific prior instances of drug transactions between 11:00 p.m. and 1:00 a.m., and the warrant was executed the same day it was issued); *State v. Luckhardt,* No. C3–02–2026, 2004

WL 1153024, 2004 Minn.App. LEXIS 573, * *11–12 (Minn.Ct.App. May 25, 2004) (holding, in an unpublished opinion, an affidavit stated sufficient particularized facts to justify issuing a nighttime search warrant because the affidavit explained that a controlled drug transaction had just occurred and pre-recorded money was in danger of being quickly disposed of because vehicles were coming and going from the residence); *Campbell v. State*, 651 P.2d 696, 698 (Okla.Crim.App.1982) (holding judge's discretion in allowing a nighttime search warrant was proper because the affiant received particularized information that manufacturing of drugs would begin at midnight); *Commonwealth v. Prokopchak*, 279 Pa.Super. 284, 420 A.2d 1335, 1337–40 (1980) (holding there was a sufficient showing to justify a nighttime search warrant because an informant told the affiant the defendant often would return home with marijuana and the same third party would remove the marijuana the same or following night).

[¶ 44] The majority cites a number of cases in which courts have held there was no probable cause to issue a nighttime search warrant. These cases are more factually analogous to this case and state the better rule. In *Fouse v. State*, 337 Ark. 13, 989 S.W.2d 146, 147, 149 (1999), the Arkansas Supreme Court reversed a denial of a motion to suppress on the ground that there was not probable cause to issue a nighttime search warrant. The affidavit stated that two police officers went to Fouse's property and confirmed the reported smell of a chemical odor. *Id.* at 146. Thereafter, a state trooper and a detective went to Fouse's property and smelled ether coming from Fouse's residence. *Id.* Fouse had been allegedly associated in the distribution of methamphetamine and had been convicted of delivery of a controlled substance. *Id.* The affidavit of the detective further stated he knew the process of manufacturing methamphetamine, that the chemicals are volatile, that the items and hardware used to manufacture methamphetamine may be removed or destroyed, and that the methamphetamine may be transported or sold. *Id.* at 149. The Arkansas Supreme Court held these statements to be conclusory, the affidavit lacking in factual support, and the nighttime search warrant not supported by probable cause. *Id.*

[¶ 45] In *State v. Richardson*, 80 Hawai'i 1, 904 P.2d 886, 887 (1995), an informant informed a police officer that an individual sold crystal methamphetamine during specified hours, which continued until 2:00 a.m. A search warrant was executed at 10:25 p.m. on the same day it was issued. *Id.* Richardson was found in the residence and arrested. *Id.* at 887–88. Hawaii's Rule 41(c), HRPP, similar to our Rule 41(c)(1)(E), N.D.R.Crim.P., "requires judges to have facts presented to them that demonstrate the existence of circumstances that would justify a nighttime search before issuing such a warrant." *Richardson*, 904 P.2d at 890. The affidavit indicated drug sales took place until at least 2:00 a.m. and also early evening. *Id.* at 891. The Hawaii Supreme Court held that the police officer's affidavit that supported the search warrant did not demonstrate a nighttime search was reasonably necessary. *Id.* The court concluded that there was "nothing in the record to explain why the search could not either have taken place in the early evening hours …, or have waited until the next day." *Id.*

[¶ 46] Bitz's affidavit contained a confidential informant's statement that Roth cooked methamphetamine in his basement twice a week. Bitz's affidavit also referred to one night of surveillance when the basement lights of Roth's residence were on from 11:30 p.m. to before 1:00 a.m. Based

on the one night of surveillance and the confidential informant's information, Bitz requested that he be allowed to execute the search warrant at any time of the day or night. Bitz stated in his affidavit: "I am requesting to be allowed to execute the warrant at any time of the day or night. This is necessary because the information gathered and surveillance conducted indicates that Todd Roth manufactures methamphetamine at night." However, this is a conclusory statement not supported by any particularized evidence of nighttime drug manufacturing. The fact that the basement lights were on from 11:30 p.m. to before 1:00 a.m. does not support that Roth manufactured methamphetamine at night. Bitz testified at the preliminary hearing that he knew Roth had another individual residing in the basement bedroom of the residence.

[¶ 47] The affidavit fails to set forth any facts that the confidential informant saw methamphetamine being manufactured at night; the confidential informant only indicated it was manufactured twice a week in the basement. Even if we assume Bitz's conclusory statement that methamphetamine was manufactured at night is supported factually, Bitz set forth no facts indicating the methamphetamine or the hardware and chemicals used to manufacture the methamphetamine at Roth's residence would be destroyed, removed, or hidden by morning.

[¶ 48] Bitz testified at the preliminary hearing that the search warrant for Roth's residence was issued on August 20, 2002, but was not executed until August 28, 2002:

Q And your warrant was issued to you on August 20th; is that correct?

A Yes.

Q And you didn't search until the 28th?

A That's correct.

Q Any reason for the delay?

A Numerous reasons. We were short-handed at the task force. There were other times where I drove by the residence and it was quiet, dark, no lights on, where I did not know if he was home, or not. So I was waiting for the time until he would be home.

The affidavit stated that the confidential informant last saw Roth cooking methamphetamine on August 17, 2002. Yet, Bitz waited eight days to execute the search warrant. This delay indicates Bitz did not have any concern that the sought-after evidence, including the methamphetamine laboratory, in Roth's residence was going to be disposed of quickly and easily, or he would have executed the search warrant much sooner. This rather indicates an ongoing methamphetamine laboratory and that there was not probable cause for a nighttime search warrant.

[¶ 49] Roth was suspected of manufacturing methamphetamine. The majority appears to use this as the fact that supports the nighttime search warrant. The crime of manufacturing, however, does not require that the suspect be caught in the act. *See* N.D.C.C. § 19–03.1–23(1). Under N.D.C.C. § 19–03.1–23(1), "it is unlawful for any person to willfully ... manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance...." "Willfully" encompasses three different culpability levels: "intentionally, knowingly, or recklessly." N.D.C.C. § 12.1–02–02(1)(e). Under N.D.C.C. § 19–03.1–01(16): "manufacture" means, in relevant part:

[T]he production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis,

or by a combination of extraction and chemical synthesis and includes any packaging or repackaging of the substance or labeling or relabeling of its container.

Finding evidence of a methamphetamine laboratory would suffice as proof of the crime under the statutes.

[¶ 50] Bitz's affidavit states a mere belief that Roth manufactures at night, without any supporting facts, and is not sufficient to justify a nighttime search warrant. The affidavit does not include any information that Roth manufactures at night, that he makes nighttime deliveries, that he disposes of, removes, or hides all chemicals, hardware, and paraphernalia after each time he manufactures, or that the quantity of drugs on the premises after manufacturing can easily be disposed of or destroyed. Particularized facts that the evidence to be seized is in danger of imminent removal or destruction, that the warrant can only be safely executed at nighttime, or that a nighttime search is justified to prevent the escape or removal of a person to be seized must be provided in the affidavit. *See* 2 Wayne R. LaFave, *Search and Seizure* § 4.7(b), at 651 n. 25 (4th ed.2004); *see also State v. Knudson*, 499 N.W.2d at 875 (requiring probable cause be established "upon a showing that the evidence sought may be quickly and easily disposed of.").

[¶ 51] At the March 24, 2003, telephonic hearing regarding the suppression decision, the trial court stated:

> As far as the no-knock provision is concerned I think both of you realize that probable cause did not exist to support the issuance of the no-knock warrant to search the defendant's residence. The affidavit did not provide evidence that knocking and announcing would have placed the executing officers in danger.
>
> . . . .

And then also the affidavit failed to provide any evidence that the drug or drug paraphernalia or cookware or related documents might be quickly disposed of without a no-knock warrant.

[¶ 52] The trial court, itself, at the telephonic suppression hearing, found that there were no facts in the affidavit to support that the drugs, drug paraphernalia, or cookware would be quickly disposed of, which was the basis for the nighttime provision. The provision in the search warrant authorizing the nighttime search stated:

> YOU ARE COMMANDED, to search, within ten (10) days ..., serving this warrant and making this search anytime day or night *being satisfied that the property sought is present or probably will be moved or destroyed* and if the property is found there, to seize it.... (Emphasis added.)

[¶ 53] The inventory that was returned following the search, and Bitz's and Detective Lynk's testimony at the preliminary hearing, indicate that the majority of the items that would be used to manufacture methamphetamine were found, not in the basement, but in the kitchen of Roth's residence, including an aluminum roasting pan, plastic bottle with solvent, pill containers, muriatic acid bottle, Ph paper, eye dropper, pie plate with residue, seventy blister packs, twenty-one boxes of pseudoephedrine, five boxes of lithium batteries, and paper towels and coffee filters with residue on them. We do not know from this record the circumstances at the time of the entry, such as whether Roth was in the process of manufacturing methamphetamine or whether there were lights on in the basement. All we know is that Bitz saw that Roth was home and there was "traffic" at the Roth residence that night.

[¶ 54] I cannot find any facts in Bitz's affidavit that made it necessary to enter Roth's residence in the middle of the night rather than in the morning.

[¶ 55] In *State v. Roth ("Roth I")*, 2004 ND 23, ¶¶ 21–24, 674 N.W.2d 495, our Court analyzed whether there was probable cause to support the no-knock search warrant Bitz obtained to enter Roth's residence. We concluded Bitz's affidavit "failed to provide any evidence that knocking and announcing may have placed the officers or others in danger" and that the affidavit "failed to set forth exigent circumstances supporting issuance of the no-knock provision of the search warrant." *Id.* at ¶ 24. Therefore, "[t]here was no substantial basis for the magistrate's conclusion that probable cause existed for the no-knock authorization." *Id.* A no-knock search warrant is validly issued if there has been a showing that either the sought-after evidence can be easily and quickly disposed of, or if there is a threat of physical violence. *Utvick*, 2004 ND 36, ¶ 15, 675 N.W.2d 387. By concluding there was not a substantial basis that there was probable cause for a no-knock search warrant, our Court implicitly concluded the sought-after evidence was not easily and quickly disposed of, which would have been an exigency supporting a no-knock search warrant. *Roth I*, at ¶ 24.

[¶ 56] Despite this, the majority says Bitz's affidavit provided sufficient probable cause to justify a nighttime search. The majority appears to be propounding a per se rule for a nighttime search anytime there is an allegation of manufacturing methamphetamine. In *Richards v. Wisconsin*, 520 U.S. 385, 394–95, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), the United States Supreme Court denounced a per se rule for no-knock search warrants in drug cases and, following the logic of *Richards*, our Court, in *Fields*, 2005 ND 15, 691

N.W.2d 233, denounced a per se rule for nighttime search warrants in drug cases.

[¶ 57] The majority, at ¶ 27, makes the unfounded and factually unsupported assumption that "in order for law enforcement to catch Roth in the process of manufacturing methamphetamine" the search must be conducted at night. The facts of this case belie that very assumption. There is nothing in the record to suggest Roth was "in the process" of manufacturing the night the search warrant was executed. Bitz testified he merely waited to serve the warrant until he knew Roth was home and there were officers available to assist him. The majority of the items used to manufacture were found in the dishwasher or the garbage in the kitchen of the residence. Roth was charged with manufacturing methamphetamine and conditionally pled guilty to the offense. The majority also wrongly speculates Roth manufactured at night and only at night, and that the warrant could not be served during the day. The majority, at ¶ 27, concludes: "If law enforcement searched Roth's residence at a time when he was not manufacturing, *it was reasonably probable that much of the evidence of the manufacturing process*, including the methamphetamine itself, *would have been removed from the premises*." (Emphasis added.) This is a statement of a per se rule for methamphetamine nighttime manufacture. Granted, facts that establish the probability that the cookware, chemicals, and other drug paraphernalia used to manufacture methamphetamine will be destroyed, removed, or hidden by morning following each manufacture can create probable cause for a nighttime search, but none exist in this case. The mere possibility or suspicion that these exigencies will happen is not enough for the particularized facts needed for a nighttime search warrant under our law, which requires proba-

ble cause and not reasonable suspicion or a hunch.

[¶ 58] Merely alleging someone cooks methamphetamine at night does not, in and of itself, support a nighttime search warrant. There must be something more in the affidavit supporting the issuance of the warrant. Such a per se rule, I believe, is contrary to our precedent and to our Court's long-held belief that this greater intrusion of privacy must be offset by a greater showing of need.

[¶ 59] I am of the opinion that under the facts alleged in Bitz's affidavit, there was no probable cause for a nighttime search warrant just like there was no probable cause for a no-knock search warrant.

### III. Exclusionary Rule

[¶ 60] "The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, and Article I, § 8 of the North Dakota Constitution protect individuals from unreasonable searches and seizures." *State v. Oien*, 2006 ND 138, ¶ 8, 717 N.W.2d 593. Evidence illegally seized in violation of an individual's Fourth Amendment rights must be suppressed under the exclusionary rule. *Id.*

[¶ 61] As the majority notes, our Court has held that suppression is the appropriate remedy for an illegal nighttime search under N.D.R.Crim.P. 41(c). *See Fields*, 2005 ND 15, ¶ 14, 691 N.W.2d 233. However, "[u]nder the good-faith exception to the federal exclusionary rule, suppression is not the appropriate remedy if the police reliance on the search warrant was objectively reasonable." *Utvick*, 2004 ND 36, ¶ 26, 675 N.W.2d 387 (citing *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). "The test under *Leon* is not whether the police officers executing the search warrant subjectively believed they were complying with the law.

Rather, the test to be applied under *Leon* is an objective standard of what reasonably well-trained police officers would believe is probable cause for a nighttime search." *Fouse*, 989 S.W.2d at 149. There are four situations in which the good-faith exception does not apply:

(1) when the issuing magistrate was misled by false information intentionally or negligently given by the affiant; (2) when the magistrate totally abandoned her judicial role and failed to act in a neutral and detached manner; (3) when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when a reasonable law enforcement officer could not rely on a facially deficient warrant.

*Utvick*, 2004 ND 36, ¶ 26, 675 N.W.2d 387. If there is no police misconduct to deter by suppressing evidence, the good-faith exception applies and suppression of the evidence is not the appropriate remedy. *Id.*

[¶ 62] I am of the opinion that a reasonable law enforcement officer could not rely on this nighttime search warrant because, lacking any facts to support probable cause, it was facially deficient, and therefore, the good-faith exception does not apply. I am persuaded by the analysis of the Nebraska Supreme Court in *State v. Fitch*, 255 Neb. 108, 582 N.W.2d 342 (1998), in concluding that the good-faith exception does not apply in this case. In *Fitch*, the court held the good-faith exception did not apply. *Id.* at 349. There, a police investigator prepared an affidavit for a search warrant of Fitch's residence. *Id.* at 345. The affidavit stated that the investigator had just and reasonable grounds to believe that a controlled substance, drug paraphernalia, and records pertaining to possession and distribution of the controlled substance were at the resi-

dence. *Id.* The investigator, in his affidavit, stated he observed known drug offenders at the residence. *Id.* Marijuana leaves, stems, seeds, and a marijuana roach were found in trash bags that came from the residence. *Id.* The search warrant was executed at 10:00 p.m., seven days after a search warrant was issued. *Id.* at 346.

[¶ 63] In analyzing whether the good faith exception applied to the invalid nighttime search, the Nebraska Supreme Court first looked to a decision of the Arkansas Supreme Court for guidance.

> In *Hall v. State,* supra, the Arkansas Supreme Court, noting the use of an objective standard, reasoned that the good-faith exception was not applicable because a reasonably well-trained officer would know that a nighttime search made without stating an underlying need for a nighttime search in the supporting affidavit is illegal despite the issuing magistrate's authorization.

*Fitch,* 582 N.W.2d at 348. Next, the court looked to *Rodriguez v. Superior Court (People),* 199 Cal.App.3d 1453, 245 Cal. Rptr. 617 (1988). In *Rodriguez,*

> [T]he court held that for purposes of the good faith exception, an officer, who was the affiant in the affidavit submitted to secure the search warrant, could not objectively rely on the validity of a nighttime endorsement in a search warrant when he knew or should have known that no facts were set forth in the affidavit to show that nighttime service was necessary and when he knew that the drug operation he expected to expose was ongoing.

*Id.* at 348–49.

[¶ 64] The Nebraska Supreme Court noted that the standard underlying the application of the good-faith exception to a nighttime search is:

> [W]hether the officer(s) had a good faith belief that the affidavit submitted in sup-

port of obtaining the search warrant stated facts sufficient to justify a nighttime search, not whether the officer(s) had a good faith belief that probable cause existed for the issuance of the search warrant.

*Fitch,* 582 N.W.2d at 349. The court also pointed out that "[t]he test for reasonable reliance on a search warrant is an objective standard of reasonableness which requires officers to have a reasonable knowledge of what the law prohibits." *Id.* at 348; *see also Leon,* 468 U.S. at 919, n. 20, 104 S.Ct. 3405.

[¶ 65] The Arkansas Supreme Court, in *Fouse,* 989 S.W.2d at 150, concluded that a nighttime search warrant was not supported by probable cause and that the good-faith exception did not apply. The officer presented an affidavit that alleged reports by law enforcement of a chemical odor coming from Fouse's residence, that Fouse had been allegedly associated in the distribution of methamphetamine with individuals who had been convicted of distributing controlled substances, that Fouse had been convicted in 1987 of delivery of a controlled substance, and that the officer had knowledge of the methamphetamine cooking process. *Id.* at 146, 149. The search warrant was executed at 12:20 a.m., and the officers found evidence of an active methamphetamine laboratory, drug paraphernalia, communication equipment, methamphetamine on Fouse's person, and a firearm. *Id.* at 147. The court held that the nighttime search warrant was unsupported by sufficient facts to establish probable cause for a nighttime search. *Id.* at 149. The court emphasized: "Our concern today is for the integrity of our Rules." *Id.* The court pointed out that what is required for a nighttime search was clear from its Rules of Criminal Procedure and "the multiple decisions of this court requir-

ing more than merely conclusory statements." *Id.*

[¶ 66] Bitz, after consulting with other law enforcement and despite receiving no-knock authorization, knocked and announced his presence before executing the search warrant at Roth's residence. *See Roth I*, 2004 ND 23, ¶ 3, 674 N.W.2d 495. "The trial court found the officers executing the search warrant realized the no-knock provision was invalid and therefore knocked and announced their presence." *Id.* at ¶ 4. A no-knock warrant may be issued when there is a showing that either the sought-after evidence may be disposed of easily and quickly or if there is a threat of physical violence. *Utvick*, 2004 ND 36, ¶ 15, 675 N.W.2d 387. Implicit in Bitz's actions is that he objectively knew that he had shown neither that the sought-after evidence could be easily and quickly disposed of or that there was a threat of physical violence. *See id.*

[¶ 67] Rule 41(c)(1)(E), N.D.R.Crim.P., requires that probable cause be shown for a nighttime search warrant. *See State v. Knudson*, 499 N.W.2d at 874 (holding that we will read into N.D.C.C. § 19–03.1–32(2) the requirement of probable cause in drug related nighttime searches). Our Court's decisions have held time and again that more than conclusory statements and suspicions are needed for a nighttime provision in a search warrant. *See, e.g., Fields*, 2005 ND 15, ¶ 10, 691 N.W.2d 233; *Knudson*, 499 N.W.2d at 875; *State v. Schmeets*, 278 N.W.2d 401, 409 (N.D.1979). A reasonable officer would have knowledge of our rules and well-established law. The good-faith exception does not apply when a "law enforcement officer had knowledge, or may properly be charged with knowledge" that the affidavit did not provide probable cause for the nighttime search. *See Leon*, 468 U.S. at 918, 104 S.Ct. 3405.

[¶ 68] In addition, the search warrant states it is relying on the affidavit of Bitz for probable cause and contained the following provision: "YOU ARE COMMANDED to search, ... serving this warrant and making this search anytime day or night being satisfied that the property sought is present or probably will be removed or destroyed ..."

[¶ 69] Our Court has held that a magistrate must authorize a nighttime search warrant by an appropriate provision in a search warrant. *State v. Berger*, 285 N.W.2d 533, 539 (N.D.1979). In *Berger*, we stated the very warrant form used in this case was "not ideal," but was sufficient. *Id.* at 539. We noted that the language indicated that the judge was satisfied that the property sought would probably be removed or destroyed if the warrant was not properly served. *Id.*

[¶ 70] Here, Bitz knew his affidavit did not provide any facts that supported the property sought would probably be removed or destroyed. By deductive reasoning, it becomes clear Bitz knew an underlying need for a nighttime search was lacking, and therefore, knew his affidavit was insufficient despite the magistrate's authorization. Bitz relied on what he knew to be a facially deficient warrant. Therefore, the good-faith exception does not apply and suppression remains the appropriate remedy.

IV. Conclusion

[¶ 71] In conclusion, I would reverse the order denying the motion for post-conviction relief because Roth did not receive effective assistance of counsel under the facts of this case.

[¶ 72] MARY MUEHLEN MARING, J.